148 So. 107

In re OPINIONS OF THE JUSTICES.

In re MULLINS CONVENTION ACT.

No. 25.

Supreme Court of Alabama.

May 10, 1933.

Response to Questions propounded by Governor.

Questions propounded by the Governor to the Justices of the Supreme Court, under Code 1923, § 10290.

Questions answered.

May 3, 1933.

To the Justices of the Supreme Court of Alabama:

Gentlemen: Under Section 10290 of the Code of Alabama, I hereby request an opinion of the Justices of the Supreme Court on the following important constitutional questions:

On March 28, 1933, the Legislature of Alabama purported to enact Senate Bill No. 148, known as the "Mullins Bill" a copy of which is hereto attached marked Exhibit "A," for your convenience.

This act provides that the ballots shall be prepared and printed in all respects as are ballots prepared and printed for general elections in the counties of this State, and shall be paid for in like manner as ballots for such general elections are now paid. It also provides that "officers for holding such election in each county shall be designated in the manner provided by law for the conduct of general elections, and the compensation to such election officers shall be the same and paid in like manner as now provided by general law."

It will thus be seen that if the Act is unconstitutional and void a large amount of money of the State and counties will be needlessly expended and for this reason I feel that it is my duty to ask for this opinion.

Please give me a written opinion on the following questions:

1. Does the said Senate Bill No. 148 violate Article 5 of the Constitution of the United States?

2. Does Senate Bill No. 148 provide for a convention to pass upon the 21st amendment to the Constitution of the United States as intended and provided for by Article 5 of the Constitution of the United States?

3. You will note from the Act that delegates are to be elected from each county in the State and that there are to be as many delegates from each county as such county now has members of the House of Representatives of the Legislature of Alabama, and that the delegates from the county are elected by the qualified electors of the county only and not by the voters from the State at large.

You will further note from the Act that each delegate from each county must subscribe to an oath set out in the Act, that if elected a delegate to the convention he will abide by the result of the referendum in the State on the question of the ratification or rejection of the proposed 21st amendment to the Constitution of the United States; and should a majority of votes cast in said election be for ratification then that he will vote for ratification, and that if a majority be against ratification then he will vote against ratification in the alleged convention sought to be provided for in the said bill.

Will a convention composed in part of delegates elected from the counties, and voted for by electors in the counties only, pledged to cast their vote according to the result of a state-wide referendum, be a convention as intended and provided by Article 5 of the Constitution of the United States?

4. The said Senate Bill No. 148 provides that on the ballot provided for the election of delegates to the convention there shall be the following:

"For repeal of 18th amendment and for ratification of proposed 21st amendment to the Constitution of the United States", and the words, "Against repeal of 18th Amendment and against ratification of proposed 21st amendment to the Constitution of the United States."

5. The act provides that it shall be necessary for the voter to indicate his choice and that unless such voter shall indicate his choice on this question his ballot for delegates to the convention, whether from the State at large or from the counties, shall not be counted but shall be null and void.

Does this provision prevent the Act from providing for a convention as intended and provided by Article 5 of the Constitution of the United States?

6. The said Act provides that any person desiring to become a candidate for membership in the convention, whether from a county or from the State at large, shall file the following oath:

"I, ———, do hereby solemnly pledge myself, in the event of my election to a convention to be held in Montgomery for the purpose of considering the ratification or rejection of the proposed 21st amendment to the Constitution of the United States, to abide by the result of the referendum in the State on the question of the ratification or rejection of the proposed 21st amendment to the Con-

stitution of the United States; and should a majority of votes cast in said election be for ratification, then I pledge myself to vote for the ratification of the proposed 21st amendment in the convention, but should a majority of the votes cast in said election be for rejection of the proposed 21st amendment, then I pledge myself to vote for the rejection of the proposed 21st amendment to the United States constitution. I further promise and pledge to comply with all laws governing general elections in the State of Alabama in the conduct of the campaign in which I shall seek election."

"_____

"Sworn to and subscribed before me this the ——— day of ———, 1933."

Does the provision that each candidate for membership in the convention, whether from a county where he is voted for by the electors in the county alone, or from the State at large where he is voted for by all of the electors of the State, must subscribe to this oath and be bound by the result of the referendum of the State at large prevent this proposed convention from being a convention as intended and provided by Article 5 of the Constitution of the United States?

7. Is the convention provided for in Senate Bill No. 148 the kind of convention contemplated by the Constitution of the United States?

8. Are there two subjects in the title and two subjects in the body of Senate Bill No. 148, that render it violative of Section 45 of the Constitution of Alabama, and therefore null and void?

Respectfully,

B. M. Miller, Governor.

The act referred to is as follows:

No. 81)      An Act      (S. 148—Mullins

To provide for holding a convention to pass upon the question of ratification or rejection of the proposed 21st amendment to the Constitution of the United States; to provide the date on which the members thereof shall be elected and the number thereof; the date on which the convention shall assemble; to provide for the holding of the election for delegates, the mode and manner thereof, and that each candidate shall pledge himself to abide by the results of the election in the State, and to provide that each voter shall cast his ballot for or against repeal of the 18th amendment and for or against ratification of the proposed 21st amendment.

### Be it Enacted by the Legislature of Alabama:

Section 1. That a convention is hereby called to convene in the Hall of the House of Representatives at the Capitol of this State, at noon, three weeks after the first Tuesday after the expiration of three months after the final adjournment of this session of the Legislature, for the purpose of ratifying or rejecting the proposed 21st amendment to the Constitution of the United States.

Section 2. That the convention herein provided for shall be composed of 116 delegates, who shall be elected from the following area and in the following manner: There shall be as many delegates from each county in the State as such county is now entitled to members of the House of Representatives of the Legislature of Alabama, to be elected by the qualified electors in such county in the manner hereinafter provided. There shall also be elected ten delegates from the State at large who shall be bound in like manner and to the same extent as delegates from the several counties of the State are bound by a majority vote of the people of the entire State.

Section 3. That on the first Tuesday after the expiration of three months from the final adjournment of this session of the Legislature an election shall be held in the several counties of the State for the purpose of electing delegates to such convention, which election, in all respects, shall be conducted in the same manner, returns made, canvassed and results declared as elections for members of the House of Representatives of the Legislature are now conducted.

Section 4. The ballots shall be prepared and printed in all respects as are ballots prepared and printed for general elections in the counties of this State, and shall be paid for in like manner as ballots for such general elections are now paid. The candidates for membership in the convention shall be listed on such ballots in alphabetical order in each county. At the top of the ticket containing a list of candidates for membership in the convention, there shall appear, properly arranged, for the voter to indicate his choice, the words, "For repeal of 18th amendment and for ratification of proposed 21st amendment to the Constitution of the United States," which shall mean in favor of ratification of the proposed 21st amendment and underneath that, the words "Against repeal of 18th amendment and against ratification of proposed 21st amendment to the Constitution of the United States," which shall mean in favor of rejection of the proposed 21st amendment. It shall be necessary for the voter to indicate his choice, that is, whether he desires repeal, or no repeal, of the 18th amendment to the United States Constitution by the ratification or rejection of the proposed 21st amendment. Unless such voter shall indicate his choice on this question, his ballot for delegates to the convention whether from the State at large or from the counties shall not be counted, but shall be null and void. The candidates receiving the highest number of votes in the county in which they are candidates for the convention shall be declared elected, and the results of the election shall

be canvassed and declared by the same officers and in the same manner as now provided by law for canvassing votes and declaring results thereof for general elections in this State. The ten candidates from the State at large receiving the highest number of votes in the State shall be declared elected as delegates from the State at large.

Section 5. Officers for holding such election in each county shall be designated in the manner provided by law for the conduct of general elections, and the compensation to such election officers shall be the same and paid in like manner as now provided by general law.

Section 6. Any person desiring to become a candidate for membership in the convention from any county in the State shall file the following statement, under oath, with the Judge of Probate in the county in which he is a candidate: "I, ———, do hereby solemnly pledge myself, in the event of my election to a convention to be held in Montgomery for the purpose of considering the ratification or rejection of the proposed 21st amendment to the Constitution of the United States, to abide by the result of the referendum in the State on the question of the ratification or rejection of the proposed 21st amendment to the Constitution of the United States; and should a majority of votes cast in said election be for ratification, then I pledge myself to vote for the ratification of the proposed 21st amendment in the convention, but should a majority of the votes cast in said election be for rejection of the proposed 21st amendment, then I pledge myself to vote for the rejection of the proposed 21st amendment to the United States constitution. I further promise and pledge to comply with all laws governing general elections in the State of Alabama in the conduct of the campaign in which I shall seek election." ——— "Sworn to and subscribed before me this the ——— day of ———, 1933." In the case of candidates for delegates from the State at large to such convention, the foregoing oath shall be taken and subscribed by each of them and filed in the office of the Secretary of State but it shall not be necessary for such candidates for delegates from the State at large to file such oath with the Judges of Probate of the several counties of this State. The Judge of Probate shall keep said affidavits as a permanent file in his office, and the Secretary of State shall keep as a permanent file in his office the affidavits filed by candidates for delegates from the State at large. The candidates elected from each county, as well as the ten candidates elected from the State at large, shall be required to support in the convention the position declared by a majority of those casting ballots in the election herein ordered in the State and if a majority of such ballots be cast for ratification, then the elected delegates whether from the State at large or from the counties, will be required to support and vote for the ratification of the proposed 21st amendment, but if a majority be in favor of rejection, the elected delegates shall support and vote for the rejection of the proposed 21st amendment.

Section 7. All delegates elected to the convention shall take the oath of office prescribed by law for officers of the State of Alabama. The convention shall determine its own rules, shall keep such journal as it may determine, and shall record its vote by yea and nay.

Section 8. Immediately after the adjournment of said convention, the proper officers shall certify, under their official signatures, the action of said convention relative to the ratification or rejection of said amendment to the Secretary of State of Alabama, who shall, in turn, certify the same to the Secretary of State of the United States of America.

Section 9. All laws and parts of laws in conflict with this act are hereby repealed; and if any section or provision of this act is held invalid because unconstitutional, the same shall not affect the other portions of this act.

Passed over the Governor's Veto March 28, 1933.

### Response of the Justices.

To Honorable B. M. Miller, Governor of Alabama.

In response to your request hereto attached for our advisory opinions, we respectfully submit:

Governments derive "their just powers from the consent of the governed."

This is fundamental in our creed of freedom announced to all nations in the Declaration of Independence.

The eminent men signing that document were the dominating forces in framing our Federal Constitution, whose preamble declares: "We The People of the United States * * * do ordain and establish this Constitution."

That Constitution (article 7) provided it should become effective upon ratification by conventions of the several states.

Existing states were then forming a federal Union, delegating to a federal government powers theretofore belonging to such states, or the people thereof.

The consent of the governed was therefore ascertained by states, which became the voting units.

The Constitution put no restrictions on the states in calling their conventions. It was left to the sovereign state to frame its own laws relating to such convention, to the end that the consent of the governed be expressed thereby.

Touching amendments, the Constitution, art. 5, provides for their ratification "by the

Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress."

It is to be noted this provision goes no further than to require Congress to propose one or the other of two alternate methods of expressing the will of the people of the several states.

On request, we have heretofore given our advisory opinion (146 So. 407) that the proposed convention is to come into being pursuant to state law, which must be duly enacted pursuant to our state Constitution.

■ The inquiry then is: Does the Federal Constitution forbid a state law providing for an instructed delegation to such convention, a delegation pledged to voice the consent of the governed, ascertained by the method recognized throughout our system, namely, the ballot?

Doubt on this point arises from the decision of the United States Supreme Court in Hawke v. Smith, Secretary of State of Ohio, 253 U. S. 221, 226, 227, 40 S. Ct. 495, 497, 64 L. Ed. 871, 10 A. L. R. 1504, wherein it was said: "Both methods of ratification, by Legislatures or conventions, call for action by deliberative assemblages representative of the people, which it was assumed would voice the will of the people."

That case dealt with a constitutional provision of the state of Ohio seeking to withdraw from the Legislature the power to ratify constitutional amendments. The effect of the decision was to hold that, when Congress names the Legislature as the ratifying body, the Federal Constitution vests full power of ratification in the Legislature, "which it was assumed would voice the will of the people."

This latter expression, it seems to us, recognizes that the ultimate aim is to voice the will of the people, the consent of the governed; and the chief deliberation of the legislative body is to ascertain by hearings and otherwise what is that will on the question of ratification.

The proposed Twenty-First Amendment deals directly with the powers hereafter to be exercised by the federal government on the matter covered by such amendment.

Conventions, rather than the Legislatures of the several states, for the first time in our history are named as the agencies through whom the states voice their several wills. True, the convention is a representative body; but it is more truly representative when expressing the known will of the people.

Keeping in view the fundamental doctrine of a government of the people, by the people, and for the people, we are unable to see in the Federal Constitution any purpose to prohibit a direct and binding instruction to the members of the convention voicing the consent of the governed.

Deliberation upon the matter is to be had beforehand, and direct advice of the result given to the members of the convention. The voter holds somewhat of delegated power and duty; the power and duty to act for those lacking in maturity in governmental affairs.

The direct pledge given to abide instructions can scarcely be more sacred than the solemnly implied pledge of electors to voice the choice of the people of their respective states for President and Vice President.

■ We therefore advise that the Convention Act is not violative of article 5 of the Federal Constitution. We further advise that the act has a single subject clearly expressed in the title and the provisions of the act are germane to such subject; therefore not violative of section 45 of the state Constitution.

The prescribed contents of the ballot merely inform the voter more fully as to the meaning and effect of his vote.

We are fully sensitive to the fact that your inquiry, in part, relates to a federal question, whose final decision rests with the Supreme Court of the United States.

Code, § 10290, contemplates advisory opinions "on important constitutional questions."

■■ Constitutional questions going to the validity of state laws seem to be the primary purpose of the statute. The Federal Constitution is the Supreme Law of Alabama.

Legislative acts in violation of same are void. It is the duty of state courts to pass upon such questions; notwithstanding their holdings, even when judicial, are nisi prius in nature, and subject to review by the Supreme Court of the United States, as the final authority.

■ In construing the statute, now Code, § 10290, in the initial case, In re Amendment to Section 93 of Constitution, 209 Ala. 593, 96 So. 487, the justices declared that the propriety of answering requests for advisory opinions is for the determination of the justices, each for himself. Adhering to this announcement, and reserving, each for himself, the right to determine whether an advisory opinion should be given as each inquiry is presented, the undersigned have deemed it proper, in view of the importance of the questions involved, to comply with your request for an advisory opinion, and respectfully submit the foregoing.

JNO. C. ANDERSON,
Chief Justice.
LUCIEN D. GARDNER
WM. H. THOMAS
VIRGIL BOULDIN
JOEL B. BROWN
A. B. FOSTER
THOMAS E. KNIGHT.