40 So.2d 849

**OPINION OF THE JUSTICES.**
**No. 96.**

Supreme Court of Alabama.
June 3, 1949.

Opinion of the Justices of the Supreme Court in response to questions propounded by the House of Representatives under Code 1940, Tit. 13, § 34, as to the validity of a proposed amendment to Section 181 of the Constitution, relating to voter qualification.

Substitute for Resolution No. 36.

Be it resolved by the House of Representatives, that the Justice of the Supreme Court as provided under the authority of Title 13, Section 34, Code of Alabama 1940, are hereby respectfully requested to render to the House their written opinion on the following important constitutional questions:

A constitutional amendment has been proposed by House Bill No. 294 introduced in the House of Representatives. A copy of House Bill No. 294 is attached. The Constitution and Elections Committee of the House of Representatives has adopted a substitute for House Bill No. 294, and a copy of the substitute is attached.

1. Does the amendment to the Constitution of Alabama, proposed by the substitute to House Bill No. 294, discriminate between persons who are and persons who are not registered as electors under the Alabama Constitution of 1901 so as to deny to the latter the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States?

2. Does the proposed amendment discriminate between persons who are and persons who are not registered as electors under the Alabama Constitution of 1901 so as to deny the right of citizens of the United States to vote on account of race or color in violation of the Fifteenth Amendment to the Constitution of the United States?

3. In the provision that no person shall be entitled to register as an elector except those who possess "good character", are the words "Good character" so vague and indefinite as to violate the "equal protection" clause of the United States Constitution, Amendment Fourteen in that no standard is provided to guide either the Supreme Court of Alabama in its administrative capacity of framing questions to test "good character", or the registrars in determining whether the applicant possesses "good character"?

4. Is the provision that no person shall be entitled to register as an elector except those who embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of the State of Alabama so vague and indefinite as to violate the "Equal Protection" clause of the United States Constitution, Amendment Fourteen, in that no standard is provided to guide either the Supreme Court of Alabama in its administrative capacity of framing questions to test said requirement or of the registrars in determining whether the applicant possess such requirements.

5. Does the provision that no persons shall be entitled to register as electors except those who embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of Alabama abridge freedom of speech in violation of the First Amendment to the Constitution of the United States as made applicable to the States by the Fourteenth Amendment thereof?

6. Does the provision that no person shall be entitled to register as an elector except those who embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of Alabama prohibit the free exercise of religion in violation of the First Amendment to the Constitution of the United States as made applicable to the States by the Fourteenth Amendment thereof?

7. Does the provision for a questionnaire to be prescribed by the Supreme Court of Alabama violate Art. I, Sec. 4 of the United States Constitution which provides that the "Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the *Legislature* thereof"?

8. Does the provision for a questionnaire to be prescribed by the Supreme Court of Alabama violate Art. IV, Sec. 4 of the United States Constitution which provides that "The United States shall guarantee to every State in this Union a Republican Form of Government"?

9. Does the provision in said Amendment that the members of the Board of Registrars are declared to be "judicial officers to judicially determine if applicants to register have the qualifications" required by said Amendment violate the "Due Process" clause of the Fourteenth Amendment to the Constitution of the United States?

10. Does the provision in said Amendment that the Board of Registrars may receive information as to the truthfulness of applicant's statement that he does not advocate the overthrow of the Government of the United States or the State of Alabama by unlawful means violate the "Due Process" clause of the Fourteenth Amendment of the United States Constitution?

11. Does the proposed amendment violate any other provision of the Fourteenth or Fifteenth Amendment to the Constitution of the United States?

Adopted May 27, 1949.

H.B. 294 By: Messrs. Givham, Martin (Greene), Taylor (Autauga), McDonald, Taylor (Hale), Shirley, George, Sellers, Meeks, Adams (Dale), Leonard, Dobbs (Elmore), Hornsby, Mason, Lovelace, Mc-Gowin, Molette, Martin (Dallas), Inzer, Thagard, Norman, Barnett, Stone, Johnston, Sullivan, Garrett, Thompson (Pike), Evans, Brannan, Haynes (Lowndes), White (Covington), Wood (Washington), Sightler, Gillis, Cobb, Harrison, Whitcomb, Crocker, Ramey, Pinson, White (Perry), Shelton, Wood (Bibb), Doughty, Malone, Faulk, Nelson, McClendon, Still, Head, Harris, Ingalls, Nettles, Dobbs (Fayette), Mitchell, Denton, Vann, Cox, Mathison, Knight, Stewart, Richardson, Robinson, Bennett, Ganey, Tucker, Duffee.

5-17-49  R 1 RFD  Constitution and Elections

A Bill to be entitled an act to propose an amendment of Section 181 of the Constitution of Alabama fixing the qualifications to register as an elector and ordering an election upon such proposed amendment to be held on the first Tuesday after the expiration of three months after the final adjournment of the present session of the Legislature.

Be it enacted by the Legislature of Alabama:

Section 1. The following amendment of Section 181 of the Constitution of Alabama is proposed to become valid as a part of the said Constitution when approved by a majority of the qualified electors voting thereon at the election provided for in Section 2 hereof, the result of such election to be made known by proclamation of the Governor.

### Amendment

"Section 181. The following persons, and no others, who, if they are citizens of the United States over the age of Twenty-one years and have the qualifications as to residence prescribed in Section 178 of this Article, shall be qualified to register as electors provided they shall not be disqualified under Section 182 of this Constitution: those who can read and write any Article of the Constitution of the United States in the English language, provided, however, that no person shall be entitled to register as an elector except those who are of good character and who understand and embrace the duties and obligations of citizenship under a republican form of government; and provided further that

those persons who have registered as electors under the Alabama Constitution of 1901 shall not be required to register again."

on the first Tuesday after the expiration

Section 2. An election upon the proposed amendment is ordered to be held of three months after the final adjournment of the present session of the Legislature. The election shall be held in accordance with the provisions of Sections 284 and 285 of the Constitution of Alabama, as amended, and Chapter 1, Article 18, Title 17 of the Alabama Code of 1940.

Section 3. Notice of the election and of the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in a newspaper in every county of the State in which a newspaper is published, and in every county in which no newspaper is published a copy of such notice shall be posted at the courthouse for four successive weeks next preceding the day appointed for the election.

Proposed Substitute for H.B. 294

A Bill to be entitled an act to propose an amendment of Section 181 of the Constitution of Alabama fixing the qualifications to register as an elector and providing therefor and ordering an election upon such proposed amendment to be held on the first Tuesday after the expiration of three months after the final adjournment of the present session of the Legislature.

Be it enacted by the Legislature of Alabama:

Section 1. The following amendment of Section 181 of the Constitution of Alabama is proposed to become valid as a part of the said Constitution when approved by a majority of the qualified electors voting thereon at the election provided for in Section 2 hereof, the result of such election to be made known by proclamation of the Governor.

### Amendment

"Section 181. The following persons, and no others, who, if they are citizens of the United States over the age of Twenty-one years and have the qualifications as to residence prescribed in Section 178 of this Article, shall be qualified to register as electors provided they shall not be disqualified under Section 182 of this Constitution: those who can read and write any Article of the Constitution of the United States in the English language which may be submitted to them by the Board of Registrars, provided, however, that no persons shall be entitled to register as electors except those who are of good character and who embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of the State of Alabama, and provided, further, that in order to aid the Members of the Boards of Registrars, who are hereby constituted and declared to be Judicial Officers, to judicially determine if applicants to register have the qualifications hereinabove set out, each applicant shall be furnished by the Board of Registrars a written questionnaire, which shall be uniform in all cases with no discrimination as between applicants, the form and contents of which questionnaire shall be prescribed by The Supreme Court of Alabama and be filed by such Court with the Secretary of State of the State of Alabama, which questionnaire shall be so worded that the answers thereto will place before the Boards of Registrars information necessary or proper to aid them to pass upon the qualification of each applicant. Such questionnaire shall be answered in writing by the applicant, in the presence of the Board without assistance, and there shall be incorporated in such answer an oath to support and defend the Constitution of the United States and the Constitution of the State of Alabama and a statement in such oath by the applicant disavowing belief in or affiliation at any time with any group or party which advocates the overthrow of the government of the United States or the State of Alabama by unlawful means, which answers and oath shall be duly signed and sworn to by the applicant before a member of the County Board of Registrars. Such questionnaire and the written answers of the applicant thereto shall be filed with the records of the respective Boards of Registrars. The Board may receive information

respecting the applicant and the truthfulness of any information furnished by him. Those persons who have registered as electors under the Alabama Constitution of 1901 shall not be required to register again. Provided, further, that if solely because of physical handicaps the applicant is unable to read or write, then he shall be exempt from the above stated requirements which he is unable to meet because of such physical handicap, and in such cases a Member of the Board of Registrars shall read to the applicant the questionnaire and oaths herein provided for and the applicant's answers thereto shall be written down by such Board Member, and the applicant shall be registered as a voter if he meets all other requirements herein set out."

Section 2. An election upon the proposed amendment is ordered to be held on the first Tuesday after the expiration of three months after the final adjournment of the present session of the Legislature. The election shall be held in accordance with the provisions of Sections 284 and 285 of the Constitution of Alabama, as amended, and Chapter 1, Article 18, Title 17 of the Alabama Code of 1940.

Section 3. Notice of the election and of the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in a newspaper in every county of the State in which a newspaper is published, and in every county in which no newspaper is published a copy of such notice shall be posted at the courthouse for four successive weeks next preceding the day appointed for the election.

Section 4. Such amendment shall be known as the "Voter Qualification Amendment."

To the Alabama House of Representatives, Montgomery.

Sirs:

■ Answering your request for an advisory opinion of the Justices of the Supreme Court in re. proposed amendment to section 181 of the Constitution, prescribing the qualification of persons entitled to registration as electors thereunder, we are of the opinion that the proposed amendment does not impinge the rights guaranteed to residents of the United States under the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

As interpreted by us, it limits the right to register to citizens of the United States residing in Alabama not disqualified by section 182 of the present Constitution of 1901, of good character, who, if not prevented by physical handicaps, can read and write in the English language any article of the Constitution of the United States submitted to them by the board of registrars set up by the amendment, and if adopted by the electorate of the State vests in the board judicial power to determine whether or not applicants possess the requisite qualifications as fixed by the amendment with the right of review by the courts as provided in section 186 of the Constitution of 1901, thus affording the applicant the same measure of equal protection of the law and due process as guaranteed to residents of this State as to life, liberty and property.

If applicants by reason of physical handicap are unable to read and write they are excepted from the provisions requiring applicants to read and write any part of the Constitution.

The proposed amendment requires applicants to pledge their good faith by oath or affirmation of their acceptance and belief in the form of government established under the Constitutions of the United States and the State of Alabama. It imposes on the Supreme Court of the State the duty of prescribing a uniform questionnaire to applicants for use by the boards of registrars touching the qualification of such applicants under said amendment to aid the board in a fair and just application of the amendment.

It confirms the right of all electors heretofore registered to continue as such, unless the right as forfeited as provided in section 182 of the Constitution.

■ The rights thus proposed to be exercised are within the powers reserved to the people of Alabama by the Constitu-

tion of Alabama and not within the grants of power ceded to the government of the United States. Constitution of 1901, section 35.

We wish to fortify our views by the following discussion of the principles on which they are based.

■ The questions involved in this inquiry relate to an application of the Constitution of the United States. Title 13, section 34, Code, which is the authority for your inquiry applies to such questions —In re Opinions of the Justices, 226 Ala. 565, 148 So. 107—although we realize that expressions of individual opinion by us as to the application to a given situation to the Constitution of the United States, may sometimes be of small value to our legislature in determining their problems in that connection, since the United States Supreme Court has the final decision in that respect.

■ We also wish to call attention to the fact that, in respect to such questions, each justice for himself has the right to determine whether an advisory opinion should be given as each inquiry is presented. In re Opinions of the Justices, 226 Ala. 565, 148 So. 107; In re Opinions of the Justices, 209 Ala. 593, 96 So. 487.

While our opinion in answer to the instant inquiry seems to us to be of doubtful value to the legislature, the House of Representatives have thought it would be of such value as to call for it, and wishing to cooperate in every way with the legislature in furthering its business, we therefore cheerfully give it the benefit of our opinion in respect to the matters inquired about.

We take it the most material feature of your inquiry is whether the proposed amendment to section 181 of the Constitution of Alabama violates the Fifteenth or Fourteenth Amendment of the Constitution of the United States.

The Fifteenth Amendment is "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

The Fourteenth Amendment, so far as here material, provides as follows: "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The proposed amendment to section 181, supra, prescribes as a qualification for registration that the electors shall be "of good moral character and who embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of Alabama."

Previously the so-called Boswell Amendment, Amend No. 55, had been adopted. It prescribed as a qualification for registration that the electors "can read and write, understand and explain any article of the Constitution of the United States in the English language." A three judge District Court of the United States, as reported in 81 F.Supp. 872, held that the words "understand and explain" did not furnish a reasonable standard to govern the boards of registrars in passing on the qualifications of prospective electors. Davis v. Schnell, D.C., 81 F.Supp. 872, 877. The United States Supreme Court affirmed, citing Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Williams v. Mississippi, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012.

It was said in Lane v. Wilson, supra, that the Fifteenth Amendment secures freedom from discrimination on account of race in matters affecting the franchise. The "grandfather clause" of the Oklahoma constitution had been stricken. Guinn et al. v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A. 1124. The new provision ratified all who had registered under that clause (white voters) and allowed twelve days in which all others should register (negroes). This was held to be too "cabined and confined."

In Yick Wo v. Hopkins, supra, an ordinance of a city was stricken as violative of the equal protection clause of the Fourteenth Amendment because it gave to the board an absolute and unrestrained discretion to give or withhold permission to carry on a lawful business.

In Williams v. Mississippi, supra, the law had provisions that the elector must be

able to read any section of the constitution, or shall be able to understand the same, or give a reasonable interpretation thereof. The case of Yick Wo v. Hopkins, supra, was relied on to strike it down. The court held that the provision did not on its face discriminate between races, and it has not been shown that its actual administration was evil—only that evil was probable under it.

█ In order to meet the requirements of the Fifteenth Amendment and the discriminatory provisions of the Fourteenth Amendment, the standard of qualification and accompanying requirements must be of such a character as to furnish a reasonably marked guide for the boards of registrars in a judicial capacity to so act that there will not be in the ordinary course any discrimination in the application of the Fifteenth or Fourteenth Amendment.

█ So we revert to the question of whether the requirement of good moral character and whether the applicant embraces the duties and obligations of citizenship under the Constitution of the United States and of Alabama furnish a well defined and ascertainable standard for the judicial determination of the boards of registrars. We think it is sufficiently definite and its substance is not unusual in judicial proceedings. Such as in naturalization matters. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. And in admissions to the Bar. Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671. And when material in other causes.—Moulton v. Smith, 88 Ala. 116, 6 So. 758, 6 L.R.A. 301; Thompson v. State, 100 Ala. 70, 14 So. 878; Williams v. State, 250 Ala. 549, 35 So.2d 567.

█ As we have said, the Amendment requires electors to "embrace the duties and obligations of citizenship under the Constitution of the United States and under the Constitution of Alabama," and requires an oath to support and defend the Constitution of the United States and of the State of Alabama, disavowing belief in or affiliation at any time with any group or party which advocates the overthrow of the government of the United States or the State of Alabama by unlawful means.

The proposed amendment does not violate the freedoms of the First Amendment applicable to states by the Fourteenth Amendment. Those freedoms are not absolute. The oath above mentioned should be taken in pari materia with the requirement to embrace the duties and obligations of citizenship under the Constitution. One who advocates the overthrow of the government by unlawful means cannot be held to embrace the duties and obligations of citizenship under the Constitution which provides for changes in governmental regulation by lawful means. The requirements do not seek to force one to believe in all the theories of our government, but his advocacy of changes must be by lawful means. He must also embrace the duties and obligations of citizenship under the Constitution. This means to accept as binding on him such duties and obligations as long as they remain in the Constitution. An oath to support the Constitution is required of all officer holders—Section 279, Constitution of 1901; why not of electors? This he cannot do unless he accepts as binding on him the duties and obligations of citizenship under the Constitution. His oath required by the Amendment would not be conclusive that he embraces the duties and obligations of citizenship under the Constitution, but would be prima facie evidence of it. Of course inquiry would be open to the board of registrars to hear evidence which may conflict with that status.

But on the face of the Amendment as a whole, nothing is manifest of an intention to discriminate against anyone in violation of the Fifteenth or Fourteenth Amendment, or to abridge any of the freedoms secured by the First and Fourteenth Amendments, or any freedom of citizenship in the United States.

The proposed amendment constitutes the members of the board of registrars judicial officers and imposes upon them the duty, as such, to judicially determine whether the applicants to register have the qualifications set out in the amendment.

We are not here concerned with the power of the legislature to constitute the board of registrars a judicial authority, although such power is conferred by section 139 of the Constitution. Ex parte Thompson, 228, Ala. 113, 152 So. 229, 107 A.L.R. 671; State Tax Commission v. Bailey & Howard, 179 Ala. 620, 60 So. 913. But we have here the supreme authority under the Constitution of the United States making declaration as to the official status of the board of registrars and, therefore, the power to declare them a judicial body in the nature of a special court is not subject to question, unless there is something in the Federal Constitution which conflicts. There is nothing in such Constitution so conflicting. So that we have here a board having the qualities of a court for the purpose of judicially determining the qualifications of applicants to register within the standards fixed by the amendment. Those standards, as we have shown, are matters which are a sufficient guide to a court in reaching the conclusion as to whether the applicant is qualified to register.

■ Having such power it is incumbent upon this special constitutional court to proceed in such manner as to accord procedural due process as defined by the Supreme Court of the United States. Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388(7), 58 S.Ct. 334, 82 L.Ed. 319; Myers v. Bethlehem Shipbuilding Corp., Ltd., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; United Gas Public Service Co., v. Texas, 303 U.S. 123, 58 S.Ct. 483, 82 L.Ed. 702; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Alabama Power Co. v. Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337; Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S. Ct. 160, 83 L.Ed. 111.

■ Until the contrary appears, it must be assumed that the board will accord due process. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816(11), 81 L.Ed. 1143.

■ When an applicant has had his claim to register considered by a court having constitutional authority to make a judicial determination of his right, and has been accorded procedural due process, such determination will not be presumed to be influenced by discrimination, and such determination will stand on the same basis as the judgment of any other court. Of course, if in any given proceeding, such discrimination is shown to exist, the constitutional rights of the applicant can be protected through ordinary processes of law, as by certiorari, Alabama Power Co. v. Fort Payne, supra, or by appeal. Section 186(6) of the Constitution of 1901.

It has never been supposed that when such a judicial hearing and determination have been authorized, the requirement of the law to that effect manifests a purpose to discriminate against anyone. Judicial determination controverts prima facie a claim to the contrary.

The question arises also as to the right to require the Supreme Court of Alabama to prepare the form and contents of the questionnaire which shall be answered by the applicant. We take it that such answers will be taken as evidence to determine the qualifications of the applicant, and is for that purpose only.

■ There is of course no doubt about the authority of the Constitution of Alabama, which is the supreme law of Alabama under the Constitution of the United States, to put such a burden upon the Supreme Court, whether it is judicial in its nature and whether it belongs to the ordinary functions of such a court.

It must be remembered that this is the voice of the people of Alabama, speaking through the Constitution and not any lesser authority, and therefore no one can question the power of the Constitution to prescribe the duties of the Supreme Court of Alabama created by that instrument, so long as there is no conflict with the Constitution of the United States.

■ It is our view also that the case of Lane v. Wilson, supra, is not authority for the position that the proposed amendment discriminates between persons who have already registered under the Constitution of 1901 and those who have not registered. Our Constitution of 1901 had a "grandfather .clause", and that clause may be

subject to the restrictions set out in the case of Guinn v. United States, supra, but the "grandfather clause" has not been operative since 1903, and those who have qualified since that time under the Constitution of 1901 have had ample opportunity to comply with its requirements: whereas in the case of Lane v. Wilson, supra, they had only twelve days in which to comply.

We think the foregoing discussion is sufficient to explain our opinion in respect to the matters inquired about, so in answer to the questions, each separately, we say:

(1) To the first question our answer is no.

(2) To the second question our answer is no.

(3) To the third question our answer is no.

(4) To the fourth question our answer is no.

(5) To the fifth question our answer is no.

(6) To the sixth question our answer is no.

(7) To the seventh question our answer is no.

(8) To the eighth question our answer is no.

(9) To the ninth question our answer is no.

(10) To the tenth question our answer is no.

(11) To the eleventh question we wish to observe that the same is so general in its nature as not to call for a specific answer.

Respectfully submitted,
JOEL B. BROWN
ARTHUR. B. FOSTER
J. ED. LIVINGSTON
DAVIS F. STAKELY,
Associate Justices.

I am of the opinion that the proposed amendment does not meet the objections pointed out in the recent case of Davis v. Schnell, D.C., 81 F.Supp. 872, affirmed, Schnell v. Davis, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. ——, wherein the so-called "Boswell Amendment" was held violative of the 14th and 15th Amendments to the Constitution of the United States.

Respectfully submitted,
THOMAS S. LAWSON,
Associate Justice.

The undersigned begs leave to assure the legislature of his great deference and respect as well as entire willingness, within limits of the law, to contribute any opinion of his that would tend to create confidence in the constitutional validity of any important act of the legislature. But it is clear to me that the present inquiry as regards the Constitution of the United States is not within those limits.

Any authoritative construction of the application of the federal Constitution to a given status can only be made by a federal court and as regards the instant inquiry, only the Supreme Court of the United States is empowered to finally say what, if any, interdictions of the 14th and 15th Amendments stand in the way of the validity of the proposed legislation.

In other words, that phase of the inquiry dealing with these constitutional provisions in essence asks us to divine what future construction the United States Supreme Court might accord the legislation. We do not have powers of divination and I do not think we should attempt it. Our opinion on such a question would be entirely theoretical and would not have the slightest authoritative or governing effect and would be invading a field beyond our prerogative and place such opinion in the realm of utter conjecture.

It will be manifest even to the layman that such is not the design of the statute which authorizes such opinions. The governing effect, as well as benefit to be served by such opinions, is indicated in § 35, Title 13, Code 1940, where it is provided that such opinions when entertained by a majority of the court shall protect officers and departments of the State who act in accordance with such opinions, just as the opinions of the attorney general of the State protect them, and when those of the attorney general are in conflict therewith, the opinion of the justices shall prevail. Any opinion on the present inquiry could

furnish no protection to any officer or department and, accordingly, would be without the scope of or contemplated benefit designed by the statute.

If I were to embark on a voyage of conjecture, I could not disagree with the analysis of the subject in the majority opinion on the authority of the principles announced in the cited cases, notably such as the case of United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 571, 75 L.Ed. 1302 (disapproved on a point not here pertinent in Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084), where the validity of the naturalization act was upheld, which required a finding by the court that during the time of the applicant's residence within the United States he had "behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same."

Nevertheless, this is but mere conjecture, for I do not think anyone could say until the final authority has spoken just to what extent, if any, our United States Supreme Court might consider that the Davis v. Schnell (Boswell Amendment) case has trenched upon the doctrine announced in the above case and others of like tenor.

The contrary view entertained by Mr. Justice Lawson illustrates the uncertainty immanent in a correct resolution of the question and but serves to point up the futility of expending our opinions on a question about which we cannot speak authoritatively.

In re Opinions of the Justices, 226 Ala. 565, 148 So. 107, cited by the majority, furnishes no analogue as a precedent making a response proper in the instant matter. There, immediate action by public officers in regard to the expenditure of public monies was involved and the response to the inquiry would in a measure indicate their right to act under the law and would be a protection to that extent. Not so here. Moreover, that opinion is not a complete conviction of the propriety of giving an opinion on federal questions and just because a mistake might have been made once is no reason to perpetuate it.

As regards any offense to the mentioned sections of the Alabama Constitution by any provision of the proposed legislation, I am in accord with the views of the majority.

Respectfully submitted,
ROBERT T. SIMPSON,
Associate Justice.