199 So. 2

## FULLER v. CITY OF CULLMAN et al.

### 6 Div. 787.

Supreme Court of Alabama.

Dec. 12, 1940.

Asa B. Fuller, of Cullman, for appellant.

St. John & St. John, of Cullman, for appellees.

LIVINGSTON, Justice.

This action was brought under and by virtue of the provisions of the General Acts of 1935, page 777 et seq., providing for declaratory judgments. The decision will clearly indicate the propriety of this form of procedure on the part of complainant, who is a resident citizen and taxpayer of the city of Cullman, and pecuniarily interested in the matters here involved and has an actual controversy with the city.

The bill of complaint together with the answer and cross-bill of respondents and the note of testimony disclose the following situation or condition: Until the year 1935, the city of Cullman did not own or operate a sewerage disposal system. During that year the city, through its governing body, acting under and by virtue of the provisions of an Act of the Legislature of 1933 (Extra Session) page 88, known as the "Kelly Act," started proceedings looking to the construction of such a system. The city employed engineers to make plans and specifications, and an estimate of the cost of a sewerage disposal system commensurate with its needs. Upon receipt of plans, specifications and estimate of cost, the city submitted its application to the Federal Government, more particularly the Public Works Administrator, for a loan and grant under the provisions of the National Industrial Recovery Act (48 Stat. page 195), which application was approved by the Public Works Administrator. Thereafter, the city, by ordinance No. 277, duly and legally adopted, authorized the issuance of four per cent. sewer revenue bonds in the principal sum of $108,000, said sum being fifty-five per cent. of the cost of the construction of the sewerage disposal system. The remaining forty-five per cent. of the cost was supplied by a grant from the Federal Government. Of the bonds issued, $91,000 were purchased by the Public Works Administrator, and later sold to the Reconstruction Finance Corporation, the present owner; and $7,000 were purchased by private individuals who are the present owners.

The engineers who drew the plans and specifications, and estimated the cost of construction of the system here involved concluded that what is generally called "primary treatment" would meet the needs of the city of Cullman in the disposal of its sewerage. They calculated that by discharging the sewerage effluent with preliminary chloralization only into a branch four miles from its entrance into Brogdan River, the necessity for secondary and final treatment would be eliminated. The conclusion and recommendation of the engineers were adopted by the city, and its sewerage disposal system constructed in accordance therewith.

It appears that plants of the type constructed in the city of Cullman, usually and in the majority of cases require what is known as "primary, secondary and final treatment" of sewerage in order to properly and efficiently operate. Cullman's sewerage disposal system was completed and put into operation in September 1936, but operation of the system revealed that "primary treatment" alone was and is insufficient for the disposal of the city's sewerage. Property owners in the vicinity of the branch into which the sewerage system empties have applied to the courts for injunctive relief against the continued operation of the system on the basis that its operation consti-

tutes a nuisance. Other like suits and suits for damages have been threatened. It now appears that installation of equipment for secondary and final treatment of sewerage is necessary in order to continue operation of the system, and that the equipment and installation will cost an additional $36,368.

The city has begun proceedings to amend its ordinance No. 277, and under which the original bonds were issued and sold, in the following particulars, namely: To change the estimate of the cost of the sewerage disposal system from $165,000 to $200,000; to increase the total amount of the bonds authorized to be issued and sold from $108,000 to $134,368; to authorize the issuance and sale (in addition to bonds numbered 1 to 98, inclusive, heretofore issued and sold) of bonds numbered 99 to 108, inclusive (heretofore issued but cremated and not sold), and bonds numbered 109 to 126, inclusive, each in the denomination of $1,000, and bond No. 127, in the denomination of $368, making the aggregate principal amount of additional bonds now sought to be issued and sold the sum of $36,368; to amend said ordinance in such other details as is necessary to fix the maturities of the additional bonds, and to provide for the payment thereof out of revenues in all respects on a parity with the original bonds now outstanding; and to provide for the stamping of all four per cent. sewer revenue bonds of the city now outstanding with a suitable legend to evidence such amendment.

It further appears that on October 10, 1940, the chief of the Division of Local Finance of the Department of Finance of the State of Alabama, after the filing of a proper petition and a hearing thereof, approved the issuance and sale of the $36,368 revenue bonds, above set out. That the owners of all the original bonds now outstanding have consented in writing to the amendment of ordinance No. 277 in the manner and form proposed by the city of Cullman, and that the Reconstruction Finance Corporation, the present owner of ninety-one of the bonds of the original issue, has agreed to purchase, at par, the proposed additional bonds. Four bonds of the original issue have been retired.

Upon amendment of ordinance No. 277, as hereinabove set forth, and upon the consent of the holders of all outstanding bonds to the amendment, and the stamping of the bonds as above outlined, being filed with the custodian bank, designated in ordinance No. 277, the city proposes to immediately issue

and sell at par additional sewerage revenue bonds in the aggregate amount of $36,368.

The trial court made and entered the following decree:

"(a) That said additional bonds, if issued in the manner, in the form and for the purposes stated in the bill, and in the cross-bill, and sold at par, will be valid and binding special obligations of the city of Cullman, payable from a fixed amount of the gross revenues of the existing sewerage system as enlarged or extended, on a parity with original now outstanding, and secured (on a parity with original bonds now outstanding) by a statutory mortgage lien on said existing sewerage system as enlarged or extended, in favor of the holder or holders of all bonds issued and outstanding.

"(b) That the issuance of said additional bonds, in the manner, in the form and for the purpose stated in the bill, and in the cross-bill, showing upon the face of each bond a statement that neither the bond nor the issue of which it forms a part constitutes an indebtedness of said city within any constitutional provision or statutory limitation of the State of Alabama, will not in fact or in law constitute an indebtedness or debt against the city of Cullman in violation of section 225 of the Constitution of the State of Alabama, or be affected by section 222 of said Constitution, assuming that the city of Cullman has a population of less than 6,000, has reached its debt limit under section 225, and neither the original issue nor the proposed issue has been authorized by a majority vote by ballot.

"(c) That the proposed issue, in the emergency described in the bill of complaint and the cross-bill, is such a contingency as is contemplated by section 19 of Act 102 as amended, authorizing the issuance of additional bonds 'in the event that the proceeds of any issue of revenue bonds, by error of calculation or otherwise, shall be less than the amount required for the purpose or purposes for which the same shall be authorized.'

"(d) That in the absence of any objection by any of the holders of any of the outstanding bonds, the language of section 19 of Act 102 as amended does not prohibit the additional bonds from being 'deemed to be of the same issue' and 'entitled to payment from the same fund without preference or priority of the bonds first issued,' merely because the original 1935

bond ordinance in section 17 thereof contained a provision which did not contemplate the present emergency."

Admittedly, the city of Cullman is now indebted in an amount equal to the limit fixed by section 225 of the Constitution, and the proposed issue of bonds has not been authorized by a majority vote of the qualified electors of the city of Cullman, under section 222 of the Constitution.

The question thus presented is, will the issuance and sale of $36,368 additional four per cent. sewerage revenue bonds by the city of Cullman violate either section 225 or section 222 of the Constitution of Alabama?

Section 19 of the Act of the Legislature (Extra Session) of 1933, pages 88, 93, as amended by an Act of the Legislature (Special Session) 1936–37, pages 236, 241, reads as follows:

"Section 8. That Section 19 of said Act approved March 29, 1933, be and the same is hereby amended so as to read as follows: Section 19. Any borrower acquiring, improving, enlarging, extending or repairing any such system or combined system pursuant to the provisions of this Act, may, in the event that the proceeds of any issue of revenue bonds, by error of calculation or otherwise, shall be less than the amount required for the purpose or purposes for which the same shall be authorized, issue additional bonds under the provisions of this Act to provide the amount of such deficit, or, in the event that later extensions and permanent improvements to such system or combined system appear to be desirable, issue from time to time additional bonds under the provisions of this Act to provide funds for such purposes. If such additional bonds are issued for the purpose of providing funds necessary to supply any such deficit, they shall, unless otherwise provided in the ordinance authorizing the original issue of bonds or in any trust indenture thereby authorized, be deemed to be of the same issue and to be entitled to payment from the same fund without preference or priority of the bonds first issued. If, however, such bonds are issued to provide funds for the acquisition of other extensions or permanent improvements, such bonds shall be deemed to be of the same issue and shall be entitled to payment from the same fund without preference or priority of the bonds first issued only in the event that it shall be specifically so provided in the ordinance authorizing the original issue of bonds or in any trust indenture thereby authorized."

This Court in Re Opinions of the Justices, 226 Ala. 570, 148 So. 111, 114, laid down the following rule:

"Our view is that, if the proposal is to pledge the revenue from an existing system or the system itself to the payment of funds used in making extensions or improvements, there is a debt created in violation of section 225 of the Constitution, when the debt limit therein provided has been reached, and that the result is not controlled by the inability to foreclose the mortgage. For, if the property once owned by the city may be thereby taken out of its control and operation, and put in the control of a receiver for the bondholders and the income from its operation may be taken away from the city, such authority has the effect of creating a debt, though no foreclosure is authorized. Thereby the effects theretofore owned by the city became subject to be taken from it and devoted to the payment of the claim. This creates a debt, though its payment is thus limited.

"But, when the city purchases or constructs a system, no part of which has been owned theretofore by it, and no revenue theretofore created from it, the pledge of it and the income from it, with no other obligation of the city to pay the price in any respect does not divert funds or property of the city which could have been used for other purposes nor does it otherwise create a debt. Under such circumstances it would not be affected by section 225 of the Constitution.

"We are also of the opinion that the bonds regulated and controlled by section 222 of the Constitution are such only as create in some form a debt of the city. We think the purpose of that provision of the Constitution is to prohibit a city from creating a bonded debt without authority conferred by the people in an election. This purpose is emphasized by the last sentence in that section.

"Our answer to your inquiry is that our conclusions are dependent upon whether the utility system involved is new to the city ownership. If so, we think the act does not violate section 222 or 225 of the Constitution, when nothing else is pledged for its security. But, if an existing system or the income from such system, or any other property then owned or any other

existing income, is burdened or further burdened by a pledge to pay for the betterments, both 222 and 225 have application."

The same principle was approved in the following cases: Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332; Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859.

That the sewerage disposal system here involved is new to the city of Cullman cannot be denied. Neither can it be denied that the city has some interest in the system having retired four of the original bonds issued and sold. Also, it is at least intimated that the city is now deriving some small amount of revenue from the operation of the system over and above that required for operating expenses and the retirement of existing bonds. But it is insisted that this interest, under present conditions, will be lost entirely if the sewerage system is allowed to remain in its unfinished state. The procedure now proposed by the city contemplates pledging revenue derived solely from the operation of the sewerage system to the payment of the additional bonds on a parity with the bonds now outstanding.

In deciding whether a given proposition is in violation of a constitutional limitation, such as here referred to, the result attempted to be brought about by what is proposed is the prime consideration, and the controlling test to it is to be found by regarding substance rather than form, in looking at its practical operation and effect when considered in the light of constitutional restrictions against improvident borrowing which the organic law obviously intended to impose in the premises. Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432.

The instant case presents a situation where neither the city nor the present bondholder can expect further revenue from the operation of the sewerage system unless the additional equipment is installed. No revenue of the city, other than that derived from the operation of the sewerage disposal system shall be pledged to the payment of the additional bonds. And the present holders of the already existing bonds have agreed and consented to purchase the additional bonds issued on a parity with the original bonds in order that the system may continue to operate.

That the city in the first instance could have constructed a sewerage disposal system sufficient for its needs is not questioned. Through an error of calculation, or otherwise, sufficient funds were not provided to complete the system contemplated. That is to say, a sewerage disposal system adequate to meet the needs of the city.

The proposal under consideration does not, in truth and in fact, contemplate an extension of or additions to a sewerage system to meet the growing needs of the city, and is but a proposal to complete the the system originally contemplated. The action here sought is but the continuation of the original venture, the completion of an unfinished sewerage disposal system left incomplete by reason of an error, or a miscalculation on the part of the city's engineers.

Viewed in the light of the constitutional restriction against improvident borrowing, which the organic law obviously intended to impose, reason and common sense dictate that the proposal of the city of Cullman, under the conditions and circumstances presented by this record, will not create an additional indebtedness of the city within the meaning of section 225 of the Constitution of this State, and will not offend against section 222 thereof.

The decree appealed from is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and KNIGHT, JJ., concur.