27 So.2d 203

**FULLER v. CITY OF CULLMAN et al.**

6 Div. 484.

Supreme Court of Alabama.
Aug. 2, 1946.

Asa B. Fuller, of Cullman, in pro per., for appellant.

Finis E. St. John, of Cullman, for appellee.

STAKELY, Justice.

This is an appeal from a final decree of the equity court declaring that the City of Cullman has full power to issue Electric Revenue Anticipation Bonds under the authority of the provisions contained in §§ 341 to 352 inclusive of Title 37, Code of 1940, when and if the Department of Finance of the State of Alabama consents thereto, after public hearing as required by law. The issues on which the decree is based were made by a bill for declaratory judgment filed by Asa B. Fuller (appellant) and the answer and cross-bill of the City of Cullman and the governing authorities thereof (appellees). The cause was submitted for final decree on the pleadings. The facts as disclosed by the pleading and as found by the trial court appear to be without dispute and may be in substance summarized as follows.

Asa B. Fuller is a bona fide resident, elector and taxpayer of the City of Cullman, Alabama. He is a customer and user of the electric system of the City of Cullman.

In 1898 the City of Cullman acquired an electric power and distribution system, which in the course of time from 1898 to 1941 became worn out and obsolete and was abandoned. In 1941 this system was worthless for any purpose and did not constitute an asset of the city against its general liabilities. (It is well to understand that the electric system at Cullman is composed of an electric power system which generates electric energy and a distribution system over which the electric energy is distributed.)

In 1941 the city purchased a new electric power system by which it generates electric energy over the old distribution system, which was a component part of the

238

original system. To pay the cost of the new electric power system the city issued and sold non-callable General Obligation Warrants in the principal sum of $100,000 and as security therefor pledged the revenue from its electric system and water system. These warrants to the extent of $75,000 are still outstanding and unpaid.

The city has never received any revenue into its general fund from the system as constituted in 1941, after the purchase of the new electric power system. On the contrary the city has been required to contribute the amount of $950 from its general fund in order to make required payments in connection with the outstanding warrants. During the period of 1941 to 1946 inclusive there has been paid on the outstanding warrants an aggregate principal and interest amount in the sum of $40,750. Of this principal and interest amount $39,800 was derived from the revenues from the electric system. Construction of the new electric power system cost $204,000. All funds from the revenue from the electric system in excess of $39,800 was used for operation, maintenance and toward the cost of $204,000 spent for construction and acquisition of the plant.

The system is "unfinished and incomplete in its present status." The present distribution system is completely inadequate. The demand for electric power is more than the safety of the plant permits. There is a constant threat of breakdown. The operation in its present incomplete condition has resulted in unusually high operating costs, continuous interruptions and inefficient service to consumers. If the necessary improvements and additions to the distribution system recommended by the engineers so as to make the entire system complete are not made, not only the ordinary users of electric energy will be affected, but also the water system will be affected. The water system obtains water at a distance of 13½ miles from the city at Mulberry River and operates on the electric power furnished by the system. The health, life, property and welfare of the people are affected by the operation of the system in that it serves not only the home users and industrial consumers of the community, but also the sewage disposal system, the water supply and purification system, the abattoir, the hospital in the community and other facilities upon which the life and health of its inhabitants depend.

■ The City of Cullman has authorized the issuance of Electric Revenue Anticipation Bonds in the principal sum of $200,000, as shown by appropriate exhibits attached to the bill, payable solely from the revenue of the electric system. $120,000 of these bonds shall be used for the construction, labor and material for completing the system by installing an adequate distribution system, and $80,000 of these bonds shall be used for refunding the aforesaid General Obligation Warrants. For the protection of the holders of the General Obligation Warrants, necessary arrangements have been made for the purchase of United States Government Bonds to be held in trust for the payment of principal and interest thereof. This court has approved this procedure. Taxpayers and Citizens of Shelby County v. Shelby County, et al., 246 Ala. 192, 20 So.2d 36.

It is conceded that the City of Cullman has reached its debt limit under § 225 of the Constitution of 1901. Issuance and sale of the proposed bonds has not been authorized by the voters of the City of Cullman.

■ The court acted correctly in approving and declaring valid the proposed issue of Electric Revenue Anticipation Bonds. The facts in the present case present a situation different from that condemned by this court in In re Opinion of the Justices, 226 Ala. 570, 148 So. 111; Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332. It is true that the revenue from the electric system has been pledged as security for the General Obligation Warrants now outstanding, but the system in its present state is incomplete and unfinished and according to the court is of "no more value than its weakest component part." The city has never enjoyed any revenue from the system which could be applied on its general obligations. Complete breakdown of the entire system is imminent unless the additional extensions and improvements are made and the system thereby completed. The City of Cullman undoubtedly faces an emergency.

No revenue of the city other than that derived from the operation of the proposed electric system will be used in payment of the bonds. Under the foregoing circumstances the proposed bonds do not constitute improvident borrowing within the meaning of constitutional provisions and the rights of the complainant will not be injuriously affected. The proposed improvements will be in effect the completion of an unfinished system left incomplete through error or miscalculation or will in effect create a new system. The proposed issue of bonds will not violate § 225 of the Constitution and the bonds will not be affected by § 222 of the Constitution. Fuller v. City of Cullman, 240 Ala. 309, 199 So. 2; Norton v. Lusk, ante, p. 110, 26 So.2d 849; State et al. v. City of Miami, 113 Fla. 280, 152 So. 6.

The decree of the lower court is free from error.

Affirmed.

GARDNER, C. J., and FOSTER, LIVINGSTON, LAWSON, and SIMPSON, JJ., concur.