319 So.2d 682

## OPINION OF THE JUSTICES.

### No. 215.

Supreme Court of Alabama.

Sept. 5, 1975.

To the Honorable Members of the Senate
 of Alabama
State Capitol
Montgomery, Alabama

Sirs:

We are in receipt of Senate Resolution
No. 58 of 22 July 1975, Alabama Legisla-
ture, Regular Session 1975. It requests
our opinion as to questions posed regarding
the constitutionality of Senate Bill No.
862 in several particulars. For ease of
reference we will set out the bill in its en-
tirety followed by the opinion in which
each question posed by the resolution will
be stated together with its answer, in seri-
atim.

A

" Synopsis: This bill authorizes joint
 or cooperative action by municipal-
 ities, electric boards and cooperatives
 in cooperation with municipal elec-
 tric authorities, public utilities and
 others in the planning, financing, de-
 veloping, acquisition, construction, im-
 proving, enlarging, owning, operating
 and maintaining facilities for the gen-
 eration, transmission, transformation
 and distribution of electric power and
 energy.

By Messrs. Stewart, King, Adams, Foshee,
Littleton, Flippo, Clemon and Pearson
S. 862
RFD – C.T. & U.

A BILL
TO BE ENTITLED
AN ACT

To provide for the joint ownership and op-
eration of systems and facilities for the
generation, transmission, transformation
and distribution, or any of them, of electric
power and energy which systems and facil-
ities may be situated within or without the
State or partly within and partly without
the State; to authorize each town, city or
incorporated municipality, each electric
board (public corporations organized under
Act No. 175 of the 1951 Regular Session
of the Alabama Legislature, as amended)
and each electric cooperative (corporations
organized under Article 1, Chapter 3 of
Title 18 of the Alabama Code of 1940, as
amended) to plan, finance, develop, acquire
by purchase or construction, lease as lessee
or lessor, improve, enlarge, own, operate,
manage and maintain such systems and fa-
cilities or any part thereof or undivided in-
terest therein, jointly or in cooperation
with, and to enter into and carry out the
provisions of any contract or contracts
with respect thereto with one or more oth-
er municipalities, electric boards, coopera-
tives, or any other person, firm or corpora-
tion including, without limitation, any mu-
nicipal electric authority incorporated as a
public corporation under the laws of the
State heretofore or hereafter enacted, the
State of Alabama, the United States of
America or any other state, or any agency
of any of them, or any public or private
corporation organized under the laws of
any state or of the United States of Amer-
ica heretofore or hereafter enacted; to
provide that such contract or contracts
may contain such provisions as the parties
thereto may determine, including the desig-
nation of an agent to act for all parties to
the contract and the arbitration of dis-
putes; to authorize any municipality, elec-
tric board or cooperative to issue its bonds

and bond anticipation notes to pay the cost of its interest in such systems and facilities and to pledge to payment of its bonds the revenues from its interest in such systems and facilities and from any electric system owned by it; to provide that such bonds shall be legal investments and eligible as security for the deposit of public funds; to authorize any municipality, electric board and cooperative to enter into trust indentures and other contracts with respect to its bonds and to fix, maintain and alter rates, fees and charges for the use of and for services furnished by any electric systems and facilities or interest therein owned by it; to exempt all municipalities, electric boards and cooperatives and their electric systems and facilities and interest therein from regulations by the Alabama Public Service Commission; to exempt every municipality, electric board and cooperative issuing bonds under the Act from the laws of the State of Alabama governing usury; to exempt all contracts made by municipalities, electric boards and cooperatives in the exercise of any power or authority under the Act from the provisions and requirements of Act No. 217 adopted at the 1967 Special Session of the Alabama Legislature, as amended, with respect to competitive bidding; and to provide that all property of any municipality or electric board acquired in the exercise of any right or power granted in the Act and the income therefrom, all bonds issued by any municipality or electric board under the Act and interest therefrom and all deeds, indentures and other documents executed by or delivered to any municipality or electric board shall be exempt from all state, county, municipal and other taxation in the State.

## BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1. *Definitions.* Whenever used in this Act, unless a different meaning clearly appears in the context, the following terms, whether used in the singular or plural, shall be given the following respective interpretations:

(a) 'Cooperative' or 'Electric Cooperative' means any corporation organized pursuant to the provisions of Article 1, Chapter 3 of Title 18 of the Alabama Code of 1940, as amended.

(b) 'Eligible Participant' means any Municipality, Electric Board or Electric Cooperative.

(c) 'Electric Board' means any corporation organized pursuant to the provisions of Act No. 175 adopted at the 1951 Regular Session of the Legislature of Alabama, as amended, which is authorized to own or operate an electric system as defined in said Act.

(d) 'Governing Body' means, when used with respect to a Municipality, the council, board of commissioners or other governing body of such Municipality, when used with respect to an Electric Board, the board of directors of such board and, when used with respect to an Electric Cooperative, the board of trustees of such Cooperative.

(e) 'Issuer' means, when used with respect to bonds or notes, the Municipality, Electric Board or Cooperative issuing such bonds or notes.

(f) 'Municipality' means any town, city or incorporated municipality in the State.

(g) 'Municipal Electric Authority' means any public corporation authorized to own a Project which corporation is organized or incorporated pursuant to authorization by the Governing Bodies of one or more Municipalities under any law of this State heretofore or hereafter enacted.

(h) 'Project' means any system or facility for the generation, transmission, transformation and distribution, or any of them, of electric power and energy by any means whatsoever, including, but not limited to, any one or more electric generating units situated at a particular site, which system, facility or generating units may be situated within or without the State or partly within and partly without the State.

(i) 'Project Costs' means the cost of any Project or any undivided interest in any Project, and shall include without limitation the cost of acquisition, construction, reconstruction, improvement, enlargement, betterment, extension or replacement of any Project or any part thereof or an undivided interest therein, cost studies, plans, specifications, surveys, estimates of costs and revenues relating thereto, the cost of land, land rights, rights of way and easements, water rights, fees, permits, approvals, certificates, franchises, the cost of preparation of applications therefor and securing the same, administrative, legal, engineering, inspection expenses, the cost of issuance of bonds, including financing fees, underwriting fees, cost and expense, and fiscal agents' fees, initial fuel costs, start up cost, the cost of operation and maintenance of the Project and interest on bonds during the period of construction and for such reasonable period thereafter as may be determined by the Governing Body of the Issuer, the establishment of reserves for the payment of the principal of and interest on bonds and for replacements, extensions, enlargements and improvements and repairs to any Project, and all other costs which the Governing Body of the Issuer may determine to be necessary or desirable.

(j) 'State' means the State of Alabama.

(k) 'Utility' means any person, firm or corporation which owns or proposes to acquire any facility or facilities or part thereof or undivided interest therein used or useful in generating, transmitting, transforming, selling or distributing electric power and energy, including, without limitation, an Eligible Participant, a Municipal Electric Authority, the State, the United States of America, any other state or any agency of any of them, or any public or private corporation organized under the laws of any state or of the United States of America heretofore or hereafter enacted.

Section 2. *Authority of Eligible Participants to engage in joint and cooperative action.* In addition and supplemental to the powers otherwise conferred on each Eligible Participant by the laws of the State, each Eligible Participant is hereby authorized and empowered to plan, finance, develop, acquire by purchase or construction, lease as lessee or lessor, reconstruct, improve, enlarge, own, operate, manage and maintain any Project or Projects or any part thereof or undivided interest therein jointly or in cooperation with one or more other Utilities and to make such plans and enter into such contracts in connection therewith not inconsistent with the provisions of this Act as the Governing Body of such Eligible Participant may deem desirable.

Section 3. *Contracts of Eligible Participants.* Each Eligible Participant is hereby authorized to enter into and carry out the provisions of any contract or contracts with one or more other Utilities providing for the planning, financing, developing, acquiring by purchase or construction, leasing as lessee or lessor, improving, enlarging, owning, operating, managing and maintaining one or more Projects. Any such contract or contracts may contain such terms and provisions as the Governing Body of the Eligible Participant may determine to be desirable, including without limitation any one or more or all of the following:

(a) the duration of the contract, which may extend for a term not to exceed 50 years;

(b) the method of financing the Project;

(c) the acquisition of the Project by purchase, lease or construction, which may provide that one of the parties to the contract or some other person, firm or corporation shall supervise such acquisition as agent for all parties to the contract;

(d) the leasing of the Project to one of the parties to the contract or some other person, firm or corporation, which lease

may extend for a term not to exceed 50 years;

(e) the operation and maintenance of the Project, which may provide that one of the parties to the contract or some other person, firm or corporation shall operate and maintain the Project as agent for all of the parties to the contract;

(f) the creation of a committee of representatives of the contracting parties, with such powers of management and supervision with respect to the Project as the contract may provide;

(g) the fixing, maintaining and altering from time to time of reasonable rates and charges for the services and facilities provided by the Project;

(h) the termination of service for nonpayment of bills; the alienation or restriction of the alienation of the undivided interest of a party in a Project, and the prohibition or restriction or partition of any Project, and such provisions shall not be subject to any provisions of law restricting covenants against alienation or partition;

(i) the respective ownership interests of the parties in the Project, their respective rights to share in the revenues to be derived therefrom, the electricity provided by and the capacity of the Project, and such ownership interests, and rights to share in revenues, electricity and capacity shall be as nearly as practicable, in proportion to the amount of money furnished and the value of property or other consideration supplied by each party in the planning, financing, developing and acquiring of the Project;

(j) procedures for the disposition of the Project or any part thereof;

(k) authorization for the exchange, interchange, wheeling, pooling and transmission of electric power and energy produced by any Project or Projects with any Utility or Utilities;

(l) the distribution of any excess electricity or output not required by any party for its own use to any Utility or Utilities;

(m) the arbitration of disputes between parties;

(n) methods for amending the contract;

(o) methods for terminating the contract;

(p) any other matters which the parties may deem desirable in connection with the joint planning, financing, acquiring, improving, enlarging, leasing, owning, operating or maintaining any Project or Projects.

No contract entered into pursuant to the provisions of this section shall constitute a charge on the general credit or tax revenues of any Municipality in this State but shall be payable and dischargeable solely from the revenues derived by such Municipality from its interest in the Project, and if the contract so provides, also from the revenues of any electric distribution system which is owned by such Municipality and which system is furnished electricity by the Project.

Section 4. *Issuance of Bonds by Eligible Participant.* Each Eligible Participant is hereby authorized to issue its Bonds (a) for the purpose of financing the acquisition, construction, reconstruction, extension, enlargement, or improvement of its undivided interest in a Project or Projects, including the payment of all Project Costs in connection therewith, (b) for the purpose of refunding the principal of and interest on any of its bonds theretofore issued under this Act and then outstanding, whether or not such principal and interest shall have matured at the time of such refunding and the payment of any premiums and expenses in connection with such refunding or (c) for any combination of the above stated purposes. Any bonds issued under this section shall be made payable solely out of the revenues derived from the operation of the undivided interest of the Eligible Participant in the Project issuing the same or, if the Eligible Participant so elects, also from the revenues derived from the operation of any other electric distribu-

tion system or systems owned by it, provided such system or systems are furnished electricity by the Project. No such bonds shall constitute a charge on the general credit or tax revenues of any Municipality. Prior to the issuance of any bonds under this section, the Governing Body of the Eligible Participant shall adopt authorizing proceedings containing a description of the bonds to be issued, including the total principal amount thereof, the maximum rate of interest to be borne thereby, the time and place of payment of the principal thereof and interest thereon and any other details respecting any such bonds as the Governing Body may deem advisable and that are not in conflict with the provisions of this Act. Bonds may be issued in one or more series, may bear such date or dates, mature at such time or times, bear interest at such rate or rates, be in such denomination or denominations, be in such form either coupon or registered or both, be executed in such manner, be payable in such medium of payment at such place or places, within or without the State, be non-redeemable or subject to such terms or redemption, with or without premium, and be subject to being declared or becoming due before the maturity date thereof as may be provided by the Governing Body in the proceedings authorizing their issuance. Such authorizing proceedings shall provide for the execution and delivery of the bonds of the Eligible Participant by its officers and in the manner therein designated. Any bonds may be sold at public or private sale in such manner and from time to time as may be determined by the Governing Body of the Eligible Participant to be most advantageous. The Eligible Participant may pay all expenses, premiums and commissions which its Governing Body may deem necessary or advantageous in connection with the issuance of the Bonds. All bonds issued under this section shall be construed to be negotiable instruments, although payable solely from a specified source. Prior to the preparation of definitive bonds any Eligible Participant may issue temporary bonds, with or without coupons, exchangeable for definitive bonds upon the issuance of the latter. The authorizing proceedings may provide for the issuance of bonds under a trust indenture, which may contain such provisions as the Governing Body may choose to insert therein regarding the duties and obligations of the Eligible Participant and the trustee under such trust indenture, the rights, remedies and privileges of the holders of the bonds and the coupons thereunto appertaining and of the trustee with respect to the undivided interest of the Project or Projects out of the revenues from which the bonds are payable, and with respect to such revenues. The trustee under such trust indenture may be any trust company or bank, either within or without the State, having the powers of a trust company in the United States. To further secure the payment of the principal of and interest on bonds issued hereunder, any Eligible Participant may enter into a contract or contracts binding itself for the proper application of the moneys borrowed hereunder, for the continued operation and maintenance of its undivided interest in any Project or Projects owned or to be acquired or constructed, leased, extended, enlarged or improved or any part thereof, for the imposition, alteration and collection of reasonable rates and charges for and the promulgation of reasonable regulations respecting any service furnished from such Project or Projects, for the disposition and application of the revenues of its undivided interest therein or for any part thereof and for any other acts or series of acts not inconsistent with the provisions of this Act for the protection of the holders of the bonds and interest coupons and the assurance that the revenues from its undivided interest in such Project or Projects will be sufficient to maintain the same in good repair and good operating condition, to pay all reasonable insurance thereon, to pay the principal of and interest on any bonds payable from such revenues, and to establish and maintain such reserves and funds as may be deemed

appropriate for the protection of the holders of the bonds and for the efficient operation of the Project or Projects. No bond or coupon issued pursuant to the provisions of this section shall constitute an indebtedness of any Municipality issuing the same within the meaning of any State constitutional provision or statutory limitation. It shall be plainly stated in each of the bonds issued by a Municipality hereunder that such bond has been issued under the provision of this Act, that such bond is payable solely from revenues as provided in this Act, and that such bond does not constitute an indebtedness of any Municipality within any constitutional provision or statutory limitation of the State.

Section 5. *Bond Anticipation Notes.* Any Eligible Participant may issue, from time to time, its negotiable notes in anticipation of the issuance of its bonds and to renew, from time to time, any such notes by the issuance of new notes, whether the notes to be renewed have or have not matured. An Eligible Participant may issue notes only to provide funds which would otherwise be provided by the issuance of its bonds. Any resolution or resolutions authorizing notes of an Eligible Participant or any issue thereof may contain any provisions which the Eligible Participant is authorized to include in any resolution or resolutions authorizing bonds and an Eligible Participant may include in any notes any terms, covenants, or conditions which it is authorized to include in any bonds. All notes shall be payable solely out of revenues which an Eligible Participant is herein authorized to pledge to its bonds and the principal proceeds from the sale of bonds in anticipation of the issuance and sale of which said notes have been issued.

Section 6. *Proceeds From the Sale of Bonds or Notes.* All moneys derived from the sale of any bonds or notes issued under this Act shall be used solely for the purpose or purposes for which the same are authorized, including the payment of all Project Costs and, in the case of bonds issued for the purpose of refunding outstanding bonds, any premium which it may deem necessary to pay in order to redeem or retire the bonds to be refunded. The treasurer or other officer designated by the Governing Body of the Eligible Participant shall give a receipt for the purchase price to the purchaser of any such bonds, which receipt shall be full acquittal to such purchaser and he shall not be under any duty to inquire as to the application of the proceeds of such bonds.

Section 7. *Rates, fees and charges.* An Eligible Participant is hereby authorized to fix and revise from time to time reasonable rates, fees and other charges for the use of and for the services furnished or to be furnished by any Project or parts thereof or interest therein owned, operated or maintained by such Eligible Participant. Such rates, fees and charges shall be so fixed and revised from time to time as to provide funds sufficient all all times (a) to pay the cost of maintaining, repairing and operating such Project or parts thereof or interest therein, (b) to pay the principal of and the interest on all bonds issued by the Eligible Participant under the provisions of this Act, as the same shall become due and payable, (c) to pay the cost of extension, enlargement, improvements and replacement to the Project, (d) to create and maintain such reserves for the foregoing purposes as may be provided in the resolution authorizing the issuance of the bonds or in an agreement securing such bonds, and (e) to make such other payments as the governing body of the Eligible Participant may determine. The Eligible Participant shall charge and collect the rates, fees and charges so fixed or revised and such rates, fees and charges shall not be subject to supervision or regulation by any commission, board, bureau, department, agency or official of the State.

Section 8. *Limitation on Joint Participation.* No liability incurred by a Municipality in the exercise of any power granted in this Act shall give rise to a charge on its general credit or tax revenues. No money or property supplied by any Eligible

Participant for the planning, financing, acquisition, construction, operation or maintenance of any common facility shall be credited or otherwise applied to the account of any other joint owner, nor shall the undivided interest or share of any Eligible Participant in any common facility be charged, directly or indirectly, with any debt or obligation of any other joint owner or be subject to any lien as a result thereof; provided, however, the reasonable and necessary expenses of administration, operation, maintenance and repair of any jointly owned Project shall be a charge on the revenues of the entire Project.

Section 9. *Officers not Liable.* No officer of any Eligible Participant and no member of the governing body of any Eligible Participant and no person or persons acting on behalf of any Eligible Participant, while acting within the scope of their authority, shall be subject to any personal liability or accountability by reason of his or her carrying out any of the powers expressly or impliedly given in this Act.

Section 10. *Bonds are Legal Investments; Security for Deposits.* Bonds issued under the provisions of this Act are hereby made securities in which all public officers and bodies of this State, all political subdivisions, all insurance companies and associations, and other persons carrying on an insurance business, all banks, bankers, trust companies, savings banks, and savings associations, including savings and loan associations, building and loan associations, investment companies, and other persons carrying on a banking business, all administrators, guardians, executors, trustees and other fiduciaries and all other persons whatsoever who are now or may hereafter be authorized to invest in bonds or other obligations of the State may properly and legally invest funds including capital in their control or belonging to them. The bonds are also hereby made securities which may be deposited with and shall be received by all public officers and bodies of this State and all political subdivisions thereof for any purpose for which deposit of the bonds or other obligations of this State is now or may hereafter be authorized.

Section 11. *The Provisions of this Act are Cumulative.* The provisions of this Act shall be deemed to provide additional and alternative methods for the doing of the things authorized thereby and shall be deemed and construed to be supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing. The issuance of bonds under the provisions of this Act need not comply with the requirements of any other law applicable to the issuance of bonds.

Section 12. *Freedom of Eligible Participants From Public Service Commission and Other State Supervision and Control.* Except as in this Act expressly otherwise provided, no proceeding, notice or approval shall be required for the acquisition of any property or Project, Projects or interest therein, or the making of any loans or the issuance of any bonds or instruments in evidence thereof or as security therefor or the exercise by an Eligible Participant of any of the powers and authorities granted in this Act, any other law to the contrary notwithstanding. Every Eligible Participant and every Project, Projects or interest therein of an Eligible Participant and the rates and charges thereof shall be exempt from all jurisdiction of, and all regulation and supervision by, the Public Service Commission.

Section 13. *Exemption from Usury Laws.* Every Eligible Participant issuing bonds or notes under this Act is hereby exempted from the laws of the State governing usury or prescribing or limiting interest rates, including, without limitation, the provisions of Chapter 6 of Title 9 of the Code of Alabama of 1940, as amended.

Section 14. *Exemption from Competitive Bidding.* All contracts made by an Eligible Participant in the exercise of any power or authority granted in this Act shall be

exempt from the provisions and requirements of Act No. 217 adopted at the 1967 Special Session of the Legislature of Alabama [Title 55, Sections 506, 507, 508 to 517, Code of Alabama, Recompiled 1958 Pocket Parts], as amended, which provides for competitive bids in connection with certain contracts.

Section 15. *Tax Exemption.* All property acquired by any Municipality or Electric Board in the exercise of any power granted by this Act and all income therefrom, all bonds, notes and other obligations issued by any Municipality or Electric Board under this Act and the interest thereon and all deeds, indentures and other documents executed by or delivered to any Municipality or Electric Board in connection with the exercise of any power under this Act shall be exempt from all state, county, municipal and other taxation in the State.

Section 16. *Power of Eminent Domain.* Every Eligible Participant is hereby granted all powers of eminent domain now or hereafter conferred on municipalities.

Section 17. *Liberal Construction.* This Act, being necessary for the welfare of this State and its inhabitants, shall be liberally construed.

Section 18. *Severability.* If any section of this Act or any part of any section, or the application thereof to any person or circumstances is held invalid, the invalidity shall not affect any other section or the remaining part of such section or the application thereof to other persons or circumstances which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

Section 19. *Inconsistent Laws Inapplicable.* All laws and parts of laws, general, local or special, inconsistent with this Act are hereby declared to be inapplicable to the provisions of this Act.

Section 20. *Effective Date.* This Act shall become effective upon its passage and approval by the Governor or upon its otherwise becoming a law."

B

(1) DOES THE BILL CONTAIN MORE THAN ONE SUBJECT IN VIOLATION OF SECTION 45 OF THE CONSTITUTION?

We answer this in the negative.

 The purposes of the "single subject" requirement Const. of Ala., 1901, § 45, are generally stated as: (a) notification to the public of the nature of the pending legislation; (b) avoidance of fraud on the legislature by inadvertent passage of provisions not related to the title, and; (c) prevention of logrolling legislation. *Boswell v. State,* 290 Ala. 349, 276 So.2d 592, appeal dismissed 414 U.S. 1118, 94 S.Ct. 855, 38 L.Ed.2d 747 (1973). The title of a bill need not specify every provision contained. The "one subject" test of § 45 is satisfied when the bill's provisions are all referable to and cognate of the subject of the bill. *Boswell,* supra; *Opinion of the Justices,* 275 Ala. 254, 154 So.2d 12 (1963). We are of the opinion that there is but one general subject in the bill: Authorizing joint ownership by municipalities, electric cooperatives, and electric boards, of systems and facilities for the generation, transmission, transformation, and distribution of electric power and energy. In our opinion all provisions of the bill are referable to that subject.

(2) IS THE SUBJECT OF THE BILL CLEARLY EXPRESSED IN ITS TITLE, AS REQUIRED BY SECTION 45 OF THE CONSTITUTION?

We answer in the negative.

 The general rules with respect to the "clear expression" requirement of Const. of Ala., 1901, § 45, are:

" * * * when the title is so misleading and uncertain that the average legis-

lator or person reading the same would not be informed of the purpose of the enactment, it is insufficient. * * *" *Pillans v. Hancock,* 203 Ala. 570, 572, 84 So. 757, 759 (1919).

" ' * * * The title must be such, at least, as fairly to support or give a clew [clue] to the subject dealt with in the act, and unless it comes up to this standard, it falls below the constitutional requirements.' * * *" *Clutts v. Jefferson County Board of Zoning Adjustment,* 282 Ala. 204, 210, 210 So.2d 679, 684 (1968). See also *Ham v. State ex rel. Buck,* 156 Ala. 645, 47 So.126 (1908).

The intent of these rules is that the title *inform* legislators and the public of the content of a bill. This is so that legislators will not be misled in voting on a bill. These are pragmatic rules, no doubt recognizing the reality that legislators do not have time to read all bills in full. They must rely, to some extent, upon the title to inform them of a bill's provisions.

In one of the briefs filed, *amicus curiae,* it is stated:

" * * * The title to the bill sufficiently discloses the contents to adequately apprise the legislature and the public of the matters which it covers. Anyone reading the title will be fully informed of its subject matter and scope."

▪ We disagree. Section 16 of the bill grants every Eligible Participant all powers of eminent domain now or hereafter conferred on municipalities. Eligible Participants are defined as any Municipality, Electric Board, or Electric Cooperative. The bill's title does not mention the power of eminent domain. The bill's title does say that Eligible Participants may acquire electric systems by *purchase or construction, and lease.* The negative inference drawn from the title is that acquisition through eminent domain power is not provided for in the bill. However, § 45 of Const., 1901, is violated only when such an

omission is misleading. Is it misleading to omit from the title a reference to the grant of the power of eminent domain to all Eligible Participants? Title 37, § 507, confers the power of eminent domain on municipalities. Title 37, § 402(18) gives the same power to Electric Boards. Thus it follows that as to these two Eligible Participants, § 16 of the bill is surplusage, and the omission from the title of reference to that power is not misleading.

Code of Ala., Tit. 18, § 33, confers on Electric Cooperatives the right

" * * * to exercise the power of eminent domain in the manner provided by the laws of this state for the exercise of that power by corporations constructing or operating electric transmission and distribution lines or systems * * *"

Code of Ala., Tit. 10, § 71, states in part:

"Corporations formed for the purpose of constructing, operating, or maintaining * * * electric works * * * power companies * * * may exercise the power of eminent domain in the manner provided by law."

However, as to rights of way, Tit. 10, § 71; must be read in conjunction with Code of Ala., Tit. 10, § 75. The latter section reads in part:

" * * * electric, power * * * companies, and all other companies formed for constructing, operating, or maintaining any work of internal improvement or public utility, may acquire by condemnation for a right-of-way for their * * * lines * * * dams * * * lands for ways and rights-of-way not *exceeding one hundred feet in width* * * * together with the necessary lands, *other than lands for ways and rights-of-way,* for the construction or installation of facilities, apparatus or equipment necessary for the operation of * * * lines * * * dams * * *" (emphasis added)

Code of Ala., Tit. 37, § 507, contains no limitation on the width of property which may be condemned by a municipality. Therefore by Section 16 of the bill, the power of condemnation granted Electric Cooperatives is enlarged. No reference to this enlargement of the right of eminent domain is found in the title to the bill. We are of the opinion such omission contravenes Const. of Ala., 1901, § 45.

Section 9 of the bill immunizes, from personal liability, officers of Eligible Participants, members of governing bodies of Eligible Participants, and all agents of Eligible Participants for acts within the scope of their authority when carrying out any power (express or implied) granted in the bill. This expansive grant of immunity is not spelled out in the title. By reason of *Jackson v. City of Florence,* 9 ABR 1540 (1975), it cannot be presumed that the grant of such immunity to municipal officers and employees is mere surplusage. We are of the opinion this omission violates § 45.

The last sentence of Section 11 of the bill states:

" * * * The issuance of bonds under the provisions of the Act need not comply with the requirements of any other law applicable to the issuance of bonds."

The title makes no reference to this exemption. Section 10 of the bill makes these bonds "securities." Thus the bill exempts the issuance of these bonds from the provisions of the *Blue Sky Laws,* Code of Ala., Tit. 53, §§ 28–29, 36–53. (Certain securities are exempt from the requirements of Tit. 53, §§ 30–35, when issued by a subdivision of the state or by regulated utilities). Moreover, the immunity from personal liability granted in Section 9 of the bill insulates those described in that section from the effect of Code of Ala., Tit. 53, §§ 28, 44. These immunities, their extent and scope, are not mentioned in the bill's title. This omission violates § 45, Const. of 1901.

Section 12 of the bill reads:

"Except as in this Act expressly otherwise provided, no proceedings, notice or approval shall be required for the acquisition of any property or Project, Projects or interest therein, or the making of any loans or the issuance of any bonds or instruments in evidence thereof or as security therefor or the exercise by an Eligible Participant of any of the powers and authorities granted in this Act, any other law to the contrary notwithstanding. * * *"

This exemption from proceedings, notice or approval, required by statutes, is not referred to in the title. Code of Ala., Tit. 19, sets forth the required procedures for the condemnation of lands. These include a judicial proceeding and notice to the landowner. Code of Ala., Tit. 19, §§ 4, 7, 10. Section 12 of the bill would not require compliance with those statutes. Omission of reference to this from the title violates § 45, Const., 1901.

While not requested to do so we conceive it our duty to point out that Section 12 of the bill allows acquisition of property without notice except as the Act provides. The Act does not provide for any notice. We observe that Const., 1901, § 13, provides that every person shall have a remedy " * * * for any injury done him in his lands * * *" by due process of law. When governmental action affects individual property rights, due process mandates hearings such as provided in Tit. 19.

(3) DOES THE BILL VIOLATE THE PROVISIONS OF SECTION 94 OF THE CONSTITUTION?

(4) DO THE PROVISIONS OF THE BILL AUTHORIZING A MUNICIPALITY TO EXERCISE ANY ONE OR MORE OF THE POWERS, RIGHTS AND PRIVILEGES CONFERRED BY THE BILL JOINTLY OR IN COMMON WITH ONE OR MORE OTHER PARTIES, CORPORATIONS, COOPERATIVES OR AUTHORITIES, PUBLIC OR PRIVATE, TO OWN AN UNDIVIDED INTEREST IN ELECTRIC

GENERATING, TRANSMISSION, TRANSFORMATION AND DISTRIBUTION FACILITIES WITH SUCH OTHER PARTIES, TO ENTER INTO CONTRACTS WITH RESPECT THERETO WITH SUCH OTHER PARTIES, TO DESIGNATE ONE OR MORE OF SUCH OTHER PARTIES AS AN AGENT AND TO DELEGATE ITS POWERS AND DUTIES TO SUCH AGENT VIOLATE SECTION 94 OF THE CONSTITUTION?

We answer in the negative.

■ Constitution, 1901, § 94, was designed to prevent the expenditure of public funds in aid of private individuals or corporations by reason of which a pecuniary liability, a debt of the municipality, is incurred. *Opinion of the Justices,* 256 Ala. 162, 53 So.2d 840 (1951). Electric Boards and Electric Authorities are not political subdivisions of this State; therefore § 94 does not apply. Municipalities are subdivisions of this State. The bill authorizes municipalities to enter into joint Projects with other Eligible Participants, a Municipal Electric Authority, the State, the United States of America, any other state or agency of either of them, or any public or private corporation lawfully created. The bill specifically provides for the cost of such Projects to be financed solely out of revenues derived from the Projects. No part of the Project costs are to be a charge on the general credit or tax revenues of any municipality. For these reasons § 94 is not violated. *Newberry v. City of Andalusia,* 257 Ala. 49, 57 So.2d 629 (1952). Nor is § 94 violated when the transaction is between a municipality and an agency of the State. *Rogers v. City of Mobile,* 277 Ala. 261, 169 So.2d 282 (1964).

"When a contract of a public body is an ordinary commercial contract, with benefits flowing to both parties *and a consideration* on both sides, it is not a lending or credit by the public body. * * *" *Rogers,* supra.

(5) DOES THE BILL VIOLATE THE PROVISIONS OF SECTION 93 OF THE CONSTITUTION?

We answer in the negative.

■ The inhibitions of Const., 1901, § 93, have reference solely to the State as an entity distinct from its political subdivisions. *Edmonson v. State Industrial Development Authority,* 279 Ala. 206, 184 So. 2d 115 (1966).

(6) DOES THE BILL VIOLATE SECTION 222 OF THE CONSTITUTION BY AUTHORIZING A MUNICIPALITY TO ISSUE ITS BONDS WITHOUT AN ELECTION OF THE QUALIFIED VOTERS OF SUCH MUNICIPALITY?

We answer in the negative.

■ Alabama Const., 1901, § 222, does not apply to bonds issued without an election of the qualified voters of a municipality when the bonds are payable solely out of revenues from a new project to be constructed with the proceeds from those bonds. *Rogers,* supra; *Opinion of the Justices,* 280 Ala. 692, 198 So.2d 269 (1967).

(7) DOES THE BILL VIOLATE SECTION 225 OF THE CONSTITUTION BY AUTHORIZING A MUNICIPALITY TO ISSUE ITS BONDS AND NOTES, TO ENTER INTO CONTRACTS AND TO INCUR LIABILITIES WITHOUT REGARD TO THE LIMITATION OF INDEBTEDNESS PRESCRIBED BY SAID SECTION 225?

■ We answer in the negative.

■ Bonds payable solely out of revenue from the project to be financed are not the bonds contemplated by Const., 1901, § 255, as they do not create a debt of the municipality. *Newberry,* supra.

(8) DO THE PROVISIONS OF THE BILL AUTHORIZING A MUNICIPALI-

TY TO PLEDGE THE REVENUES OF ANY EXISTING ELECTRIC SYSTEM OWNED BY IT TO ITS BONDS OR NOTES ISSUED TO ACQUIRE AN UNDIVIDED INTEREST WITH OTHERS IN AN ELECTRIC SYSTEM OR FACILITY VIOLATE SECTION 225 OF THE CONSTITUTION BY PERMITTING THE ISSUANCE OF BONDS AND NOTES WITHOUT REGARD TO THE LIMITATION OF INDEBTEDNESS PRESCRIBED BY SAID SECTION 225?

(9) DO THE PROVISIONS OF THE BILL AUTHORIZING A MUNICIPALITY TO PLEDGE THE REVENUES OF ANY EXISTING ELECTRIC SYSTEM OWNED BY IT TO ITS BONDS ISSUED TO ACQUIRE AN UNDIVIDED INTEREST WITH OTHERS IN AN ELECTRIC SYSTEM OR FACILITY VIOLATE SECTION 222 OF THE CONSTITUTION BY PERMITTING THE ISSUANCE OF BONDS WITHOUT AN ELECTION OF THE QUALIFIED VOTERS OF SUCH MUNICIPALITY?

We answer in the affirmative.

Prior to the passage of Amend. CVII (107), Const., 1901, our law was clear to the effect that a pledge of income from an existing revenue producing system, owned by a municipality, to the payment of bonds to finance a new system was impermissible under Ala.Const., 1901, §§ 222, 225, unless such pledge of revenue was necessary to complete a system. *Williams v. Water Works and Sanitary Sewer Board,* 261 Ala. 460, 74 So.2d 814 (1954); *Fuller v. City of Cullman,* 248 Ala. 236, 27 So.2d 203 (1946);

Amendment CVII provides:

"*Issuance of Revenue Bonds and Other Revenue Securities by Municipalities*

"Revenue bonds and other revenue securities at any time issued by a munici-

pality for the purpose of extending, enlarging or improving any water, sewer, gas or electric system then owned by such municipality shall not be deemed to constitute bonds or indebtedness of such municipality within the meaning of sections 222 and 225 of this Constitution if by their terms such bonds or other securities are not made a charge on the general credit or tax revenues of the issuing municipality and are made payable solely out of revenues derived from the operation of any one or more of such systems."

It is argued that this amendment sanctions the provisions of the bill permitting pledge of income from existing municipal owned electric systems to payment of bonds issued to acquire an undivided interest with others in an electric system or facility. The pledge provision (Section 4 of the bill) allows a municipality, *if it so elects,* to pledge revenue to the payment of bonds issued to finance the system from "the operation of any other electric distribution system or systems owned by it, provided such system or systems are furnished electricity by the Project." By this provision the bill attempts to bring the pledge within the operative ambit of Amend. CVII which allows pledge of revenues from an existing system to extend, enlarge, or improve that system and avoid the effect of §§ 222, 225, Const., 1901.

In *Chamberlain v. Board of Commissioners of City of Mobile,* 243 Ala. 662, 11 So. 2d 724 (1943), this court upheld a pledge of Bankhead Tunnel tolls to the payment of bonds issued to make *necessary* improvements for the tunnel system. Since, in that case, the tolls could never become subject to the use of the city for its general purposes, or a part of its general purpose fund, without subsequent legislative action, this court, on the facts of that case, held that the pledge did not violate §§ 222 or 225, Const., 1901, even though the tunnel itself was complete.

The bill we are discussing, would authorize bonds to be issued to finance creation of a *new* "Project" in part owned by a municipality, its undivided interest in which might be paid for by conveyance of an already existing facility owned by such municipality. No stretch of imaginative legal reasoning could lead one to conclude that this process was an extension, enlargement, or improvement of a "then owned" municipal electric system as contemplated by Amend. CVII.

This opinion is that of the individual justices who sign it, entirely advisory and binds no one. The opinion is strictly limited to specific answers to constitutional questions within the narrow confines of those questions as posed by Senate Resolution 58 of 22 July 1975. No opinion is intended as to other constitutional questions that may be posed by Senate Bill No. 862 about which no questions were asked in the resolution.

Respectfully submitted,

JAMES H. FAULKNER

ERIC EMBRY
Associate Justices

■■■ We concur in the answers to Questions (1)–(7), inclusive.

As to Questions (8) and (9) we opine that these questions should be answered in the negative—that is, the stated provisions of the Bill do not contravene either section 222 or section 225 of the Constitution in our judgment.

Amendment CVII [107] of the Constitution expressly provides that revenue bonds and other revenue securities issued by municipalities "for the purpose of *extending, enlarging or improving* any water, sewer, gas or electric system then owned by such municipality shall not be deemed to constitute bonds or indebtedness of such municipality within the meaning of sections 222 and 225 of this Constitution if by their terms such bonds or other securities are not made a charge on the general credit or tax revenues of the issuing municipality and are made payable solely out of revenues derived from the operation of *any one or more of such systems.*" [Emphasis ours.]

■■■ Under the express terms of the Bill in question [S.B. 862], no bonds issued under the Act shall constitute a charge against the general credit or tax revenues of the municipality. The bonds must be made payable solely from revenues from the interest of the municipality in the project or, at the election of such municipality, also from revenues derived from the operation of its entire electrical system. Thus, such bonds are *not charges against* the municipality's credit.

We are of the opinion that such generating facilities, as may be planned, financed, developed, acquired, constructed, improved, enlarged, owned, operated and maintained, under the Act, fall within the ambit of Amendment CVII [107] being for the purpose of *"extending, enlarging, or improving"* such system or systems.

Thus, Amendment CVII [107] of the Constitution exempts revenue bonds, issued for the purpose of *"extending, enlarging or improving"* such systems, from the provisions of sections 222 and 225, if by their terms they are not made a charge on the general credit of the municipality but are made payable solely out of revenues from the operation of the system. The Act in question so provides.

We would add that we do not consider the case of *Chamberlain v. Board of Commissioners of City of Mobile*, 243 Ala. 662, 11 So.2d 724 (1943) to require a different result. To the contrary, we consider it supports our conclusion. In that case this Court held that street improvements, overpasses and underpasses constituted "extensions" of the then completed Bankhead Tunnel so as to permit financing their cost

by the issuance of revenue bonds payable from tunnel revenues.

Respectfully submitted,

PELHAM J. MERRILL

JAMES N. BLOODWORTH

RENEAU P. ALMON

JANIE L. SHORES
Associate Justices

A majority of the justices opine that the subject of the Bill is not clearly expressed in its title, as required by Section 45 of Alabama's Constitution. We disagree with this opinion.

We realize that it is difficult to lay down a fixed and definite rule which will clearly mark the dividing line between what is and what is not violative of Section 45 [*Lovejoy v. Montgomery*, 180 Ala. 473, 61 So. 597 (1913)], but we think that the title in this Bill meets all constitutional requirements. These are our reasons. Since at least as early as the case of *Lockhart v. City of Troy*, 48 Ala. 579 (1872), where the title read, "An Act to Establish a Charter for the City of Troy, in Pike County," this Court has held that "[t]he title need not be an index to the Act; nor need it state a catalog of all the powers intended to be bestowed." We have not gone through all of this Court's cases construing Section 45, but in at least two cases involving adversary proceedings, this Court held valid titles to acts which did not list or catalog that the authorities created by the acts had the power of eminent domain. In *Brammer v. Housing Authority of Birmingham District*, 239 Ala. 280, 195 So. 256 (1940), then Chief Justice Anderson wrote:

"As we understand, the title and main or chief subject of the act is the 'Housing Authority Act' and think that the other things and authority thereby conferred or provided are germane or cognate to the title subject. If the object or subject is stated generally in the title and the law embraces matter relevant and pertinent thereto and said title is not used in a restrictive sense, the details incident to the accomplishment of the object and purpose of the act will not render it obnoxious to Section 45. *State v. Price*, 50 Ala. 568; *State ex rel. Bragg v. Rogers et al.*, 107 Ala. 444, 19 So. 909, 32 L.R.A. 520; *Alabama State Bridge Corporation v. Smith*, 217 Ala. 311, 116 So. 695; *Rogers v. Garlington*, 234 Ala. 13, 173 So. 372; *Jefferson County v. City of Birmingham*, 235 Ala. 199, 178 So. 226; *Harris v. State ex rel. Williams*, 228 Ala. 100, 151 So. 858; *Mitchell, Judge v. State ex rel. Florence Dispensary* and *Powers v. Mayor and Aldermen of the City of Florence*, 134 Ala. 392, 32 So. 687; *Dearborn v. Johnson*, 234 Ala. 84, 173 So. 864."

More recently, in *Knight v. West Alabama Environmental Improvement Authority*, 287 Ala. 15, 246 So.2d 903 (1971), this Court considered the question of whether Act No. 1117, Acts, 1969, violated Section 45, because there were some powers granted the Authority in the body of the Act which were not mentioned in the title. This Court said:

"Among other provisions, Section 45 of the Constitution says that each law enacted by the legislature 'shall contain but one subject, which shall be clearly expressed in its title.'

"The title to Act No. 1117 does not make any expressed reference to the provisions of Sections 3, 8(7) and 8(9) of the Act which set forth detailed purposes and powers of such public corporations and authorize said public corporations to render financial assistance to industries and private corporations and the provisions of Section 8(1) which authorize the public corporations to engage in works of watershed improvements.

"A lucid discussion of this constitutional provision is found in *Opinion of*

*the Justices,* 275 Ala. 254, 154 So.2d 12, wherein the following language appears:

" '(2) One of the purposes of the requirement of Section 45, *supra,* that the subject of a law shall be clearly expressed in the title, is to prevent surprise or fraud upon the legislature by incorporating in bills provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting the bill. *Opinion of the Justices,* 247 Ala. 195, 23 So.2d 505. Another purpose is to fairly apprise the public of the import of the legislature so they may be heard. *Grayson v. Stone,* 259 Ala. 320, 66 So.2d 438.

" '(3) *However, this Court is committed to the principle that this requirement as to clear expression of the subject of a bill in the title is not to be exactingly enforced in such manner as to cripple legislation, or is it to be enforced with hypercritical exactness, but is to be accorded a liberal interpretation.* Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; *Taylor v. Johnson,* 265 Ala. 541, 93 So.2d 143.

" '(4) When the subject of a bill is expressed in general terms in the title everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. *Dearborn v. Johnson,* 234 Ala. 84, 173 So. 864.'

"This Court in *Yielding v. State ex rel. Wilkinson,* 232 Ala. 292, 167 So. 580, held that a statute has but one subject, no matter to how many different matters it relates if they are all cognate, and but different branches of the same subject."

In each case, the authorities were given the power of eminent domain and this grant of power was set out in the body of the Act but was not set out in the title. Consequently, we cannot agree with the views stated by the Justices that the subject of the Bill is not clearly expressed in its title.

We concur in the answers to questions numbered (1), (3), (4), (5), (6) and (7) contained in the portion of this advisory opinion signed by Justices Faulkner and Embry.

We agree with the answers to questions numbered (8) and (9) contained in that portion of the advisory opinion signed by Justices Merrill, Bloodworth, Almon and Shores.

HOWELL T. HEFLIN
Chief Justice

HUGH MADDOX
Associate Justice