*1364 Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
We have received House Resolution No. 218, by which you request the opinion of the Justices as to whether House Bills 441 and 564 violate the provisions of Article I, Section 10, of the United States Constitution and Article I, Section 22, of the Constitution of Alabama of 1901.
Your resolution reads:
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court or a majority of them, to give this body their written opinions on the following important constitutional question which has arisen concerning the pending bills, House Bills 441 and 564, copies of which are attached to this resolution and made a part hereof by reference:
“Would House Bills 441 and 564 violate the prohibition against impairing the obligations of contracts of Article I, Section 10 of the Constitution of the United States and Article I, Section 22 of the Constitution of Alabama, 1901?
“RESOLVED FURTHER, That the Clerk of the House is hereby directed to send sufficient true copies of the pending bills, House Bills 441 and 564, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court forthwith upon adoption of this resolution.”
House Bill 441 provides:
“Relating to Mobile County; levying a fee on any industry, business, municipality, industrial development board, or medical board exempted from all ad valo-rem taxes levied for school purposes in the county; and providing for collection and distribution of the revenue collected pursuant to the act.
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. Any industry, business, municipality, industrial development board, or medical clinic board presently exempted from all county ad valorem taxes levied for school purposes in Mobile County shall pay an annual fee in the amount of the ad valorem tax exemption. Revenue collected pursuant to this act shall be used for capital outlay purposes in the schools of the county.
“The fee shall become due and payable at the same time as ad valorem taxes become due and payable. The fee shall be collected by the Mobile County Reve *1365 nue Commissioner and shall be deposited in the county treasury to the credit of the Mobile County School Board.
“Section 2. This act shall become effective upon the adoption of an amendment to the Constitution of Alabama of 1901, authorizing the Legislature to levy a fee on any industry, business, municipality, industrial development board, or medical board in Mobile County which is exempted from all ad valorem taxes levied for school purposes in the county.”
House Bill 564 is the proposed amendment to the Constitution of Alabama of 1901, and it provides:
“The Legislature may levy a fee on any industry, business, municipality, industrial development board, or medical board in Mobile County which is exempted from all ad valorem taxes levied for school purposes in the county. The revenue collected from the fee shall be used for capital outlay purposes in the schools of the county.”
The query posed to this Court is whether House Bills 441 and 564 violate the prohibition against impairing the obligations of contracts imposed by Article I, Section 10, of the Constitution of the United States and Article I, Section 22, of the Constitution of Alabama of 1901. We cannot definitively answer that question, as the circumstances of the original tax exemption are not apparent, and they are material to any decision this Court would reach on the merits of an individual case, but we trust that the following statements of applicable law on this subject will aid the Legislature in its purpose.
The purpose of the Contract Clause, Article I, Section 10, of the United States Constitution [1] and Article I, Section 22, of the Alabama Constitution of 1901,[2] is “to preserve sacred the principle of the inviolability of contracts against that legislative interference [that] the history of governments has shown to be so imminent, in view of the frequent engendering of popular prejudice, and the consequent fluctuations of popular opinion.” Edwards v. Williamson, 70 Ala. 145, 151 (1881).
Before addressing the possibility of conflict between the proposed bills and the Contract Clause, we must determine the nature of the legislation. Although the proposed bills use the term “fee,” they have the effect of rescinding prior grants of tax exempt status. “A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered, [which is a fee].” Gunby v. Yates, 214 Ga. 17, 19, 102 S.E.2d 548, 550 (1958). See Town of Eclectic v. Mays, 547 So.2d 96, 103 (Ala.1989). The purpose of these bills is to raise revenue for the Mobile County School District. The amount of the fee is not related to any service provided to the affected entities; rather, it is equal to the ad valorem tax for the school district that would be collected if the entities were not tax exempt. Therefore, it appears that these bills have the effect of repealing the tax exempt status of these entities as to ad valorem school taxes.
Thus, the question becomes whether the Legislature can revoke an entity’s tax exempt status without violating the Contract Clause. The answer to that question depends upon the manner in which each affected entity was granted tax exempt status. There are basically two ways the affected entities may have been given tax exempt status: (1) through passage of a general law or (2) through grant of a corporate charter.
If the tax exempt status was created by a general law, it can be rescinded by a statute. See, e.g., Court of County Commissioners of Calhoun County v. Woodstock Iron Co., 82 Ala. 151, 153, 2 So. 132 (1887). In Woodstock Iron, Chief Justice Stone wrote:
“By statute approved April 23, 1873 (Sess.Aets, 1872-3, p. 76) the ‘buildings, *1366 factories, works and other machinery’ of certain manufacturing enterprises, were declared exempt from all taxation, ‘for a period of ten years from the time the same shall be erected and put in operation.’ This was a general law, and no part of any statute incorporating a company, one or more. According to all rulings, such statutes are construed as simply a bounty offered to stimulate industry; and even when factories are erected under the offered bounty, they do not amount to contracts, so as to be irrepealable. Subsequent legislatures may repeal such statutes, and the bounty ceases thenceforth.”
(Emphasis supplied).
Therefore, as to a tax exempt status established by a general law, House Bills 441 and 564 do not violate the Contract Clause.
However, if the tax exempt status was given in the corporate charter, the proposed bills may or may not violate the Contract Clause. Determining whether a particular corporate charter constitutes a contract between the State and the corporation, so that the State cannot alter, amend, or revoke the terms without violating the Contract Clause, requires consideration of two factors (1) whether the corporate charter was given before Section 238, Alabama Constitution of 1901, or its predecessor, Article XIV, § 10, Alabama Constitution of 1875,[3] was enacted; and (2) if the corporate charter was given after enactment of Section 238, whether the exercise of the power reserved by the section would impermissi-bly deprive the affected entity of a vested right.
Section 238 provides:
“The legislature shall have the power to alter, amend, or revoke any charter of incorporation now existing and revocable at the ratification of this Constitution, or any that may be hereafter created, whenever, in its opinion, such charter may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the stockholders.”
Charters of corporations have been held to be contracts between the Legislature and the corporations. A tax exempt status granted in a charter before Section 238 was enacted constitutes a “vested right” that cannot be divested by subsequent legislation. See, e.g., Ware Lodge No. 435, A.F. & A.M. v. Harper, 236 Ala. 334, 182 So. 59 (1938) (an exemption from taxation in the charter of a corporation is part of the contract between the corporation and the State and is inviolable to a like extent as other contract obligations); see also, State v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011 (1902). Section 238 reserved the power to alter, amend, or revoke a corporate charter; thus, this reserved power to alter, amend, or revoke is part of every corporate charter given after the adoption of Section 238.
However, the power to alter, amend, or revoke reserved to the Legislature in Section 238 is limited. In order to exercise that power, the Legislature must find that the charter may be injurious to the citizens of this State. Also, Section 238 requires that the alteration, amendment, or revocation be done in such a manner that no injustice shall be done to the stockholders. See Opinion of the Justices No. 222, 333 So.2d 125, 127-28 (Ala.1976).
Therefore, in response to the query presented to this Court, we answer (1) that a tax exempt status created by general law, which has been held to create a bounty, may be rescinded by the Legislature without violating the Contract Clause; (2) that a tax exempt status created by a corporate charter issued before Section 238, Alabama Constitution of 1901, was adopted may not be rescinded by subsequent action of the Legislature without violating the Contract Clause; and (3) a tax exempt status created by a corporate charter issued after the enactment of Section 238 may or may not be rescinded without violating the *1367 Contract Clause, depending upon the resulting deprivation of rights.
We note that for almost 30 years it has been the policy of this Court to decline to give advisory opinions on legislation involving purely local matters, and the House bills presented are purely local bills. We have made an exception when it was necessary to decide such matters in developing the rationale to answer other questions of an important constitutional nature that involved general laws. Opinion of the Justices No. 322, 507 So.2d 927, 927 (Ala.1987); Opinion of the Justices No. 164, 269 Ala. 127, 130, 111 So.2d 605, 608 (1959). We now make another exception in choosing to answer the present query because the proposed legislation contains a constitutional amendment that must be ratified statewide; also, these bills affect the funding of the Mobile County School District, which, constitutionally, stands in a position somewhat different from that of Alabama’s other county school systems, see Section 270, as amended by Amendment 111, Alabama Constitution of 1901. Therefore, we choose to answer this query.
However, we wish to make it clear that we remain committed to our general policy of not issuing an advisory opinion on purely local matters. We know that the distinguished members of the House of Representatives understand that this policy was adopted in order that the members of this Court may devote themselves to preparing opinions in the ever-increasing number of cases that come here by appeal and to answering requests for advisory opinions concerning proposed legislation of statewide application.
We close with this caveat. We have rendered this advisory opinion as promptly as possible, believing that the House of Representatives is interested in receiving timely answers to its questions. We point out that time has not permitted a thorough study on our part, and we have not been favored with any amicus curiae briefs. Also, we have not had the advantage of an adversary proceeding, at which facts would have been developed and the issues more clearly defined. See Opinion of the Justices No. 212, 291 Ala. 581, 586, 285 So.2d 87, 91-92 (1973).
QUESTION ANSWERED.
Respectfully submitted,
SONNY HORNSBY Chief Justice
HUGH MADDOX
RENEAU P. ALMON
JANIE L. SHORES
OSCAR W. ADAMS, Jr.
GORMAN HOUSTON
HENRY B. STEAGALL II
MARK KENNEDY
KENNETH F. INGRAM Justices

. "No state shall ... pass any ... law impairing the obligations of contracts_”

. "[N]o ... law ... impairing the obligation of contracts ... shall be passed by the general assembly.”

. In further discussion, this section will be referred to as Section 238. However, in all matters we mean to be understood as referring to Section 238 of the 1901 Constitution and Article XIV, § 10, of the 1875 Constitution.