*194 Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
We have received House Resolution No. 123, requesting the opinions of the Justices of the Supreme Court as to whether the constitutional amendment proposed by House Bill 434, if ratified, would violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. House Resolution No. 123 reads as follows:
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honor *195 able Chief Justice and Associate Justices of the Supreme Court or a majority of them, to give this body their written opinions on the following important constitutional question which has arisen concerning the pending bill, House' Bill 434, a copy of which is attached to this resolution and made a part hereof by reference.
“House Bill 434 proposes an amendment to the Constitution of Alabama of 1901, stating that the county-by-county reappraisal of property conducted and supervised by the Department of Revenue pursuant to Chapter 7 of Title 40 of the Code of Alabama 1975, shall not be conducted more often than once every four years in Escambia County, Alabama.
“If ratified, the constitutional provision will impose different intervals of property assessments in ■ Escambia County than are provided for in other parts of the state. Such distinct classification plan raises certain constitutional issues.
“Accordingly, pursuant to Section 12-2-10 of the Code of Alabama 1975, and in deference to this legislative body, so that we may properly and constitutionally dispatch the duties of our office, written opinions are respectfully requested concerning the following important constitutional question regarding this matter:
“If ratified, would the constitutional provision violate the equal protection or due process clause of the 14th Amendment to the Constitution of the United States?”
House Bill 434, proposing an amendment to the Constitution of Alabama of 1901, states, in part:
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. The following amendment to the Constitution of Alabama of 1901, is proposed and shall become valid as a part of the Constitution when all requirements of this act are fulfilled:
“PROPOSED AMENDMENT
“The county-by-county reappraisal of all property in the State of Alabama which is- conducted and supervised by the Department of Revenue pursuant to Chapter 7 of Title 40, Code of Alabama 1975, shall not be conducted more often than once every four years in- Escambia County, Alabama.
“Section 2. An election upon the proposed amendment shall' be held in accordance with Amendment 555 to the Constitution of Alabama of 1901, now appearing as Section 284.01 of the Official Recompilation of the Constitution of Alabama of 1901, as amended, and the election laws of this state.
“Section 3. The appropriate election official shall assign a ballot number for the proposed constitutional amendment on the election ballot and shall set forth the following description of the substance or subject matter of the proposed constitutional amendment:
“ ‘Relating to Escambia County, proposing an amendment to the Constitution of Alabama of 1901, to provide that property in Escambia County, Alabama, would not be subject to reappraisal more often than every four years.’ ”
Section 12-2-10, Ala.Code 1975, provides that “[t]he Governor, by a request in writing, or either house of the Legislature, by a resolution of such house, may obtain a written opinion of the justices of the Supreme Court of Alabama or a majority thereof on important constitutional questions.” In responding to the first request for an advisory opinion, the Justices of the Supreme Court, in considering the consti *196 tutionality of the Advisory Opinion Act, Act No. 43, Ala. Acts 1923, now codified at § 12-2-10, stated:
“Interpreting the act according to its manifest effects, these conclusions must, of necessity, prevail: (a) That the act does not at all contemplate the advice or the advisory opinions of the Justices upon any matter relating to the wisdom, desirability, or policy of prospective legislative or executive action; (b) that the merely advisory opinions contemplated are those of the individual Justices, not the Supreme Court of Alabama in its judicial capacity; (c) that specific inquiries, within the intent of the act, must involve or concern concrete, important constitutional questions upon matters or subjects of a general public nature, as distinguished from questions involved in the ascertainment or declaration of private right or interest; (d) and that responses to questions within the purview of the act are designed to be advisory, consultative only, not concluding or binding the Governor or the House or Houses propounding inquiries or the Justices responding thereto.”
Opinion of the Justices No. 1, 209 Ala. 593, 594, 96 So. 487, 488-89 (1923).
Since 1959, it has been the policy of members of this Court to decline to answer an advisory opinion on prospective legislative action involving a question on a local matter. In Opinion of the Justices No. 16k, 269 Ala. 127, 111 So.2d 605 (1959), the Governor had requested an advisory opinion as to whether a proposed constitutional amendment dealing with the levy of special school taxes in Cleburne County was constitutional. The Justices stated:
“Our chief difficulty is whether questions relating to a school tax in a single county ‘involve or concern concrete, important constitutional questions upon matters or subjects of a general public nature,’ ... as to require an advisory opinion.... But we do feel that no more advisory opinions should be issued by the members of this Court when the only questions, constitutional or otherwise, involve purely local matters.”
269 Ala. at 130, 111 So.2d at 608 (quoting Opinion of the Justices No. 1, 209 Ala. at 594, 96 So. at 489). See also Opinion of the Justices No. 3k8, 665 So.2d 1377, 1378 (Ala.1995) (“The Justices [in Opinion of the Justices No. 16k ] wrote that it was difficult to say that questions relating to a single county ‘involve or concern concrete, important constitutional questions upon matters or subjects of a general public nature.’ ” (quoting Opinion of the Justices No. 16k, 269 Ala. at 130, 111 So.2d at 608, quoting Opinion of the Justices No. 1, 209 Ala. at 594, 96 So. at 489)); Opinion of the Justices No. 833, 598 So.2d 1362, 1367 (Ala.1992) (“We note that for almost 30 years it has been the policy of this Court to decline to give advisory opinions on legislation involving purely local matters. ...”); Opinion of the Justices No. 80k, 436 So.2d 832, 833-34 (Ala.1983); Opinion of the Justices No. 207, 287 Ala. 342, 342, 251 So.2d 759, 760 (1971) (declining to issue an advisory opinion because the question involved “purely local matters”); Opinion of the Justices No. 192, 281 Ala. 231, 231, 201 So.2d 103, 104 (1967); and Opinion of the Justices No. 191, 281 Ala. 187, 200 So.2d 486 (1967).
The members of this Court have, however, made exceptions to the policy that they will not render advisory opinions on local matters. First, they have addressed questions concerning local matters when “necessary to decide such matters in developing rationale to answer other questions of an important constitutional nature which involved general laws.” Opinion of the Justices No. 80k, 436 So.2d at 834. See also Opinion of the Justices No. 362, 692 So.2d 828, 829 (Ala.1997); Opinion of the Justices No. 3k8, 665 So.2d at 1378; and *197 Opinion of the Justices No. 333, 598 So.2d at 1367. This exception does not apply in regard to the request currently before us.
Additionally, in Opinion of the Justices No. 333, 598 So.2d at 1367, the Justices made a further exception to this policy when a proposed constitutional amendment involving a local matter required a statewide referendum and affected the funding of the Mobile County School District, which, constitutionally, stood in a unique position in regard to Alabama’s other county school systems. However, it would appear that the proposed constitutional amendment at issue here would not be subject to a statewide vote unless the occurrence of the circumstances outlined in Art. XVIII, § 284.01(d), Ala. Const.1901,[1] were to occur. Moreover, we recognize nothing constitutionally distinct regarding property appraisals in Escambia County that, like the constitutionally unique school-funding situation in Mobile. County, would necessitate that the members of this Court carve out yet another exception to the policy declining to answer questions involving local matters. Instead, “we remain committed to our general policy of not issuing an advisory opinion on purely local matters.” 598 So.2d at 1367.
We further note that “[i]n order for a state taxing classification to withstand a challenge on constitutional grounds under the equal protection clause of the fourteenth amendment, there must be a ‘rational basis’ for the possible discriminatory effect of that tax.” Howell v. Malone, 388 So.2d 908, 911 (Ala.1980). A determination of whether a rational basis exists requires the members of the Court to “inquire (a) whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.” State v. Colonial Pipeline Co., 471 So.2d 408, 412 (Ala. Civ.App.1984). An inquiry into the governmental purpose of the proposed amendment, and whether the classification it purportedly creates is rationally related to that purpose, necessarily involves a determination of the ‘“facts which afford a reasonable basis’ ” for the legislature’s action. 471 So.2d at 412 (quoting Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 510, 57 S.Ct. 868, 81 L.Ed. 1245 (1937)). However, there are no facts before us elaborating on the governmental purpose to be served by quadrennial property tax appraisals in Escambia County.
We thus believe that the question posed by your resolution would be best answered in an adversarial proceeding in a trial court. There, parties may conduct discovery and establish the factual basis necessary to address properly the issues raised in your request for an advisory opinion. As the Justices of this Court have previously stated:
*198 “ ‘[I]n the spirit of harmony and cooperation, a majority of the individual Justices have frequently exercised [the] privilege [of giving advisory opinions]. However, this procedure is not without difficulty in that the opportunity is not generally available for opposing views to present their respective positions, nor are pertinent facts presented as is usual in the adversary nature of our judicial system. The Supreme Court’s primary function is one of appellate review, exercised in the context of adversary proceedings. The very nature of our judicial process mandates that decisions be rendered only after all sides have presented their respective views, together with appropriate legal precedent and authority supporting such views....’”
Opinion of the Justices No. 327, 519 So.2d 956, 959 (Ala.1988) (quoting Opinion of the Justices No. 280, 417 So.2d 936, 936-37 (Ala.1981)).
We thus respectfully decline to answer the question posed in your request.
QUESTION DECLINED.
Respectfully Submitted,
/s/ Drayton Nabers, Jr. Drayton Nabers, Jr. Chief Justice
/s/ Harold See Harold See
/s/ Champ Lyons, Jr. Champ Lyons, Jr.
/s/ Robert B. Harwood, Jr. Robert B. Harwood, Jr.
/s/ Thomas A. Woodall Thomas A. Woodall
/s/ Lyn Stuart Lyn Stuart
/s/ Patricia M. Smith Patricia M. Smith
/s/ Michael F. Bolin Michael F. Bolin Associate Justices
Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
I have received the House of Representatives’ request for the opinion of the Justices of the Supreme Court as to whether the constitutional amendment proposed by House Bill 434, if ratified, would violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. After clarifying the nature and scope of advisory opinions of the Alabama Supreme Court, I answer the question in part below.

I. The Nature of an Advisory Opinion

Under Alabama law, the Governor or the legislature may petition the Justices of the Alabama Supreme Court for a written opinion on important constitutional questions:
“The Governor, by a request in writing, or either house of the Legislature, by a resolution of such house, may obtain a written opinion of the justices of the Supreme Court of Alabama or a majority thereof on important constitutional questions.”
§ 12-2-10, Ala.Code 1975. These advisory opinions express the individual views of the Justices of the Court rather than the view of the Court itself — even where every member of the Court has joined in a single advisory opinion. Thus, advisory opinions do not bind those who request them, and their precedential authority is merely persuasive.
Nevertheless, an advisory opinion may still be very useful as an indicator of how *199 the Court is likely to rule in a case before it in which the same issues are raised. Consequently, I am inclined to answer a question posed by a request by the Governor or the legislature for an advisory opinion on an important constitutional question, even when, as in this case, the advisory opinion must be incomplete because of limited information made available with the request.

II. The Legislature’s Request

If ratified as a local constitutional amendment,[1] House Bill 434 would provide that real property in Escambia County be subject to reappraisals for tax purposes at most once every four years. The bill makes no reference to the other counties of the State, which, at the time of this advisory opinion, are in the process of converting to some form of annual tax reappraisal from the previous method of tax appraisals every four years following a 2003 directive from the Alabama Department of Revenue.[2]
Consequently, unless the Department of Revenue reverses its directive, an event not precluded under Alabama law, or the legislature passes a general law requiring the Department of Revenue to restore the quadrennial tax appraisals statewide, the ratification of the constitutional amendment proposed by House Bill 434 would result in the residents of one county, Es-cambia, facing property-tax reappraisals every four years while the residents of every other Alabama county face tax reappraisals every year.
Concerned that the resulting disparity of the frequency in appraisals might be unconstitutional, the House of Representatives has asked the Justices of this Court for an advisory opinion, posing the following question:
“If ratified, would the constitutional provision violate the equal protection or due process clause of 'the 14th Amendment to the Constitution of the United States?”
Because the question addresses the constitutional import of disparate treatment between one county and the rest of the State, the question does not involve purely a local matter. Moreover, this subject matter is capable of repetition in other proposed local constitutional amendments. Accordingly, my response follows.

III. The Answer to the Legislature

The Founding Fathers believed that human rights were God-given and inalienable but also frequently usurped by civil government. To help protect against such usurpation, the Founders enumerated some of these rights in the first 10 amendments to the Constitution and later in subsequent amendments. Among the later amendments was the Fourteenth, which states, in relevant part:
“All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the *200 United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
(Emphasis supplied.)

A. The Due Process Clause

Because the legislature’s question regarding possible infringement of the Due Process Clause of the Fourteenth Amendment to the United States Constitution can be answered more easily than its question regarding the Equal Protection Clause, I will respond to it first and then address the possible infringement of the Equal Protection Clause.
The Justices of the Alabama Supreme Court have previously issued advisory opinions on the constitutionality under the Due Process Clause of the Fourteenth Amendment of a variety of proposed bills. See, e.g., Opinion of the Justices No. 32, 230 Ala. 543, 162 So. 123 (1935); Opinion of the Justices No. 96, 252 Ala. 351, 40 So.2d 849 (1949); Opinion of the Justices No. 102, 252 Ala. 527, 41 So.2d 775 (1949); Opinion of the Justices No. 106, 252 Ala. 559,. 42 So.2d 56 (1949); Opinion of the Justices No. 155, 264 Ala. 452, 88 So.2d 778 (1956); Opinion of the Justices No. 168, 270 Ala. 42, 115 So.2d 475 (1959); Opinion of the Justices No. 181, 277 Ala. 630, 173 So.2d 793 (1965); Opinion of the Justices No. 20k, 287 Ala. 331, 251 So.2d 749 (1971); Opinion of the Justices No. 215, 294 Ala. 555, 319 So.2d 682 (1975); Opinion of the Justices No. 216, 294 Ala. 571, 319 So.2d 699 (1975); Opinion of the Justices No. 222, 333 So.2d 125 (Ala.1976); Opinion of the Justices No. 238, 345 So.2d 1354 (Ala.1977); and Opinion of the Justices No. 262, 373 So.2d 293 (Ala.1979).
As currently drafted, the proposed local constitutional amendment does not deprive any person of life. Nor does it deprive any person of liberty. Provided the proposed amendment is duly ratified according to the Alabama Constitution, it also does not deprive any person of property without due process of law. Accordingly, I conclude the proposed constitutional amendment does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[3]

B. The Equal Protection Clause

The Justices of the Alabama Supreme Court have also previously issued advisory opinions on the constitutionality under the Equal Protection Clause of the Fourteenth Amendment of proposed bills on a variety of topics. See, e.g., Opinion of the Justices No. 106, 252 Ala. 559, 42 So.2d 56 (1949); Opinion of the Justices No. 138, 262 Ala. 345, 81 So.2d 277 (1955); Opinion of the Justices No. 181, 277 Ala. 630, 173 So.2d 793 (1965); Opinion of the Justices No. 18k, 278 Ala. 412, 178 So.2d 641 (1965); Opinion of the Justices No. 278, 403 So.2d 197 (Ala.1981); Opinion of the Justices No. 293, 410 So.2d 60 (Ala. 1982); and Opinion of the Justices No. 31k, 468 So.2d 883 (Ala.1985).
Consequently, there is no general prohibition against issuing a similar advisory opinion in this instance as well. Before responding to the equal-protection question directly, however, I will supply some historical legal context for the current property-appraisal and property-tax system in Alabama.
Alabama changed its property-tax system after a three-judge panel in Weissinger v. Boswell, 330 F.Supp. 615 (M.D.Ala. 1971), held that Alabama’s then existing *201 property-tax system was unconstitutional. Amendment No. 325, proposed by Act-No. 116, Ala. Acts 1971 (3d Spec. Sess.), and proclaimed ratified on June 8, 1972, and now appearing as § 217, Ala. Const. 1901 (Recomp.), establishes different classes of property for property-tax purposes. The property-classification system promulgated by Amendment No. 325 was upheld in Weissinger v. White, 733 F.2d 802 (11th Cir.1984). Act No. 160, Ala. Acts 1971 (3d Spec. Sess.), codified as Ala.Code 1975, § 40-7-60 et seq., established a system for statewide property reappraisal.[4]
Alabama’s constitutional provisions on property taxes also already allow for some variation among counties. § 217, Ala. Const. 1901 (Recomp.) (Amendments No. 325 and No. 373). For example, § 217(c) authorizes counties and municipalities to increase or decrease the assessment ratio applicable to any class of property. “Such assessment ratios as herein authorized may vary among taxing authorities so long as each such assessment ratio is uniform within a taxing, authority.”
In addition, § 217(i) exempts the municipalities of Mountain Brook, Vestavia Hills, and Huntsville from the caps imposed on the ad valorem taxes as a percentage of “the fair and reasonable market value of such taxable property in any one ad valo-rem tax year....” Furthermore, § 217(Z) authorizes counties to impose a one-time “additional ad valorem tax of not more than two mills on all taxable property located in the taxing authority in order to reimburse itself for its payment of such costs of reappraisal.... ”
It is clear from each of these examples that Alabama’s property-tax system does not mandate uniformity. Instead, it allows for. variation based on local needs and circumstances.
Similarly, the United States Supreme Court has recognized that property appraisals need not be uniform or be kept precisely current at a given time:
“Just as [the Equal Protection] Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes, it- does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional •requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.”
Allegheny Pittsburgh Coal Co. v. County Comm’n of Webster County, West Virginia, 488 U.S. 336, 343-44, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)(internal citations omitted)(emphasis added). Although there should be uniformity in treatment within a taxing authority, § 211, Ala. Const. 1901 (Recomp.), there is some room for differences between separate taxing authorities:
“[Although] distinctions based on geographical areas are not, in and of themselves, violative of the Fourteenth Amendment, Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), a state must demonstrate, if it wishes to establish different classes of property based upon different geographical localities — e.g.,- rural areas as opposed to urban areas — that the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy. State *202 Board of Tax Comm’rs of Indiana v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931).”
Weissinger, 330 F.Supp. at 623-24. However, according to the United States Supreme Court, there must be a rational basis for any such differences between taxing authorities:
“The appropriate standard of review is whether the difference in treatment ... rationally furthers a legitimate state interest. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. This standard is especially deferential in the context of classifications made by complex tax laws. ‘[I]n structuring internal taxation schemes “the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.” ’ ”
Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (citations omitted).
The above examples and standards may be applied to the proposed constitutional amendment. And, because the “rational basis” standard is usually not a difficult one for a civil government authority to meet, I have little doubt that a rational basis could be established for the proposed constitutional amendment. But “could be established” and “are established” are clearly not the same, and I agree with my fellow Justices, who today are responding separately to the request for an advisory opinion, that, because we are limited to the documents supplied to us by the legislature in its request for an advisory opinion, “there are no facts before us elaborating on the governmental purpose to be served,” 925 So.2d at 197, by returning to quadrennial tax appraisals in Escambia County alone. We are not told anything about the cost to implement an annual reappraisal program in Escambia County, the rate of the growth of property values in Escambia County, distinct land-use patterns, the projected net effects of the implementation of such a program, or any of the many other conceivable bases for this local constitutional amendment.
“To be sure, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification. United States Railroad Retirement Bd. v. Fritz, 449 U.S. [166], at 179 [(1980)]. See also McDonald v. Board of Election Comm’rs of Chicago, 394 U.S. 802, 809 (1969) (legitimate state purpose may be ascertained even when the legislative or administrative history is silent). Nevertheless, this Court’s review does require that a purpose may conceivably or ‘may reasonably have been the purpose and policy’ of the relevant governmental de-cisionmaker.”
Nordlinger v. Hahn, 505 U.S. at 15. But without such information — ordinarily supplied to the Court as the result of a trial below, with witnesses, or by briefs — there is no information before us to demonstrate the rational basis of the proposed constitutional amendment. Therefore, like the other Justices in their separate response to the legislature’s request for an advisory opinion, I am ultimately unable to answer the legislature’s question regarding the Equal Protection Clause.

*203
IV. Conclusion

The proposed legislation does not violate the Due Process Clause of the Fourteenth Amendment. It may also not violate the Equal Protection Clause of the Fourteenth Amendment, but the legislature has not supplied sufficient facts for a full review of that question.
QUESTION ANSWERED IN PART; DECLINED IN PART.
Respectfully submitted,
/s/ Tom Parker Tom Parker Associate Justice

. Article XVIII, § 284.01, Ala. Const. 1901 (Amend.No.555), provides, in part:
"(a) Any proposed constitutional amendment which affects or applies to only one county shall be adopted as a valid part of the constitution by a favorable vote of a majority of the qualified electors of the affected county who vote on the amendment. ...
[[Image here]]
"(d) In the event any constitutional amendment proposed for adoption pursuant to this amendment is approved by at least a three-fifths vote of the elected members of each house of the Legislature but with one or more dissenting votes cast, the amendment shall be treated as a statewide amendment as described in subsection (e).
"(e) If after having been approved by at least a three-fifths vote of the elected members of each house of the Legislature without a dissenting vote cast the proposed amendment is not approved by a majority vote the Local Constitutional Amendment Commission, it shall automatically be submitted in a statewide referendum in accordance with the procedures for proposed statewide constitutional amendments under Sections 284 and 285 of the Constitution of Alabama of 1901.... ”

. Ala. Const. 1901, § 284.01 (Recomp.) (Amend. No. 425 and Amend. No. 555).

. Under Alabama law, the Department of Revenue is authorized to "prescribe for the counties the procedures to be followed” and the "standards to be met" for property appraisals. § 40-7-63, Ala.Code 1975. For their part, the counties are required to follow the standards established by the Department of Revenue in appraising property according to its "fair and reasonable market value.” § 40-7-62, Ala.Code 1975. Before the 2003 directive requiring annual reappraisals, the practice in nearly every county was to appraise property for tax purposes only once every four years.

. I recognize that various glosses have been applied to justify more elaborate interpretations of the Due Process Clause. However, I do not consider them to have any application here and thus see no reason to discuss them.

. Even under the statewide system established by the Department of Revenue pursuant to Act No. 160, there were some differences among counties on the frequency of property reappraisals. For example, Montgomery County began annual reappraisals before the Alabama Department of Revenue's 2003 directive requiring all counties to transition to annual reappraisals over the course of five years.